**Complaint statement submitted by: Dr. Dina F. El Mahdy (Complainant), Associate Professor of Accounting at Morgan State University against Morgan State University (Respondent).**

Dr. Dina F. El Mahdy ("Complainant" or "Dr. El Mahdy") is currently an Associate Professor of Accounting (with tenure) at Morgan State University since May 2016. She was also employed as a Visiting Professor of Accounting from August 2011 to July 2014 and an Assistant Professor of Accounting from July 2014 to May 2016 at the same institution. The Complainant graduated with a Bachelor of Commerce (accounting major, Valedictorian "out of a pool of over 12,000 students") from Cairo University in Egypt in 1997 and earned her Master of Science degree in Accounting from the same institution in 2004. In her mid-career and after spending 10 years as a tenure-track assistant instructor (an elite academic appointment only given to Valedictorians) at Cairo University in Egypt, the Complainant decided to move to the USA to study towards her PhD degree in accounting at Virginia Commonwealth University and was granted the degree in 2011. The Complainant is a white female who was born and raised in Egypt. The Complainant, to the best of her knowledge, is the only white female Egyptian professor at Morgan State University. This significant underrepresentation of the Complainant's national origin, sex and race made her a target of harassment, discrimination, and aggressive behavior in her current employment since the first few days of hire.

The Complainant submitted a complaint in the EEOC (the "Commission") on November 21, 2018 alleging discrimination and retaliation on the basis of race, sex and national origin and alleging violation of Title VII of the Civil Rights Act against her employer Morgan State University ("Respondent" or "University"). Although the alleged violation occurred between August 11, 2011 and November 21, 2018 per the charge of discrimination filed with the Commission, the Complainant claims that the violation continued to occur after filing the complaint with the Commission and caused unbearable pain and suffering that negatively affected the Complainant's health and well-being and created a hostile work environment. The Complainant has been continuously complaining over the years since the date of hire, exhausted all internal avenues to seek resolutions but the Respondent never addressed the critical issues in the complaint or the present rebuttal statement, and consequently faced significant retaliations. The Complainant an attorney as a last resort to resolve the issues with the Respondent. The attorney sent a correspondence on 8/3/2020 that was never addressed by the Respondent as of 9/18/2020 (the date of filing the Federal Government Lawsuit). The Respondent failed to cooperate with the legal council of the Complainant and informed the Complained to take whatever legal actions she wishes. The Complainant alleges continuity of harassment and emotional torture by the Respondent that caused unbeatable pain and suffering to the Complainant as explained in the rebuttal statement. More specifically, the Complainant would like to submit the following claims against the Chairperson Sharon Gary Finney (Respondent) as well as Morgan State University (Respondent) through its agents and representatives:

1. Claims of discrimination based on the Complainant's race and national original. The claims of discriminations are related to:

1

(a) Unfair overload of work distribution,

(b) Unfair work schedule,

(c) Unfair exclusion from teaching in the PhD accounting program and/or be included in the PhD graduate program committees from the date of hire until August 2020 although the Complainant is academically qualified and has been employed for nine years at the Respondent. The Complainant is the "one and only faculty" who is excluded from these activities based on her race, gender and national origin,

2. Claims of retaliation after the Complainant filed the complaint of discrimination against the Respondent. The retaliation occurred by the Chair in the form of:

(a) Blackmailing, causing extreme stress and anxiety that affected the health of the Complainant, and further harassing the Complainant when applied for sick leave. The Chair Sharon Gary Finney continuously and on a regular basis kept sending emails with defamatory actions and calling the Complainant liar, incivil and non-collegial just on the basis of filing a complaint with the Commission (EEOC).

(b) Violating the HIPPA Act by disseminating information across campus related to the Complainant health records.

(c) Unfair issuance of reprimanded letter that includes deliberate false statement only "after" the Complainant complained from discrimination "in writing". A clear evidence of retaliation.

(d) Falsely accusing the Complainant that she is not authorized to work outside only "after" the Complainant complained from discrimination "in writing". A clear evidence of retaliation.

(e) Falsely accusing the Complainant of not being collegial "after" the Complainant complained from discrimination "in writing". A clear evidence of retaliation.

(f) Ignoring and tampering evidence related to a sexual harassment incident towards the Complainant by Dr. Solomon Alao, an Administrative Official responsible for the Assessment project at the Respondent. The Complainant stepped down from a major service project after facing sexual harassment incident by the above-named faculty. The Respondent failed and intentionally ignored complying with Federal Laws regarding prohibiting sexual harassment on campus, further committing a series of retaliatory acts against the Complainant.

(g) Engaging in defamation off campus at Georgetown University where the Complainant was working part time.

(h) Unfair exclusion from the norms and practices employed by majority of faculty at the Respondent who teach outside the Respondent at least two courses or more. Public information is available to proof the earnings from teaching outside of some faculty to validate this allegation. The Complainant was the one and only faculty who was asked to comply with the one course policy when she complained from racial discrimination. "after" the Complainant complained from discrimination "in writing". A clear evidence of retaliation.

3. Claims of creating a hostile environment and encouraging faculty to engage in unlawful acts against the Complainant. The hostile environment is described below:
   (a) The Complainant received direct hate remarks by the faculty Yu Cong on and was ordered to leave her job because Asian faculty hate her. The hate remarks were immediately reported to the FBI and the Dean.
   (b) The Complainant was cyberstalked by Dr. Keys and Dr. Thurivadi to know the Complainant's outside employment whereabout although other faculty who work part or full time outside like Dr. Pamela Queen and Dr. Bilal Makkawi were excluded from this cyberstalking.
   (c) The Complainant was stalked and defamed by the faculty Kang Cheng at Georgetown University.
   (d) An attempt to steal the original research work of the Complainant by Dr. Henry Mburu who is an alumnus of the Respondent and a former student of Dr. Alex Tang who praised the Chair for reprimanded the Complainant to cause mental anguish, emotional torture and reputational damage.

Attached to this complaint:
1. A timeline of discriminatory and retaliatory events committed by the Respondent towards the Complainant.
2. The signed EEOC charges of discrimination.
3. The Right to sue letter issued by the EEOC.
4. The letter from the Complainant's retained attorney addressed towards the Respondent that was never addressed.

Respectfully Yours,

Dr. Dina El Mahdy
Associate Professor of Accounting
Morgan State University
September 18, 2020

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Dina El Mahdy**<br>**1114 W Joppa Road**<br>**Towson, MD 21204** | From:  **Baltimore Field Office**<br>**G.H. Fallon Federal Building**<br>**31 Hopkins Plaza, Suite 1432**<br>**Baltimore, MD 21201** |

[ ] *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **531-2019-00248** | **Victor Owolabi,**<br>**Investigator** | **(410) 801-6719** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Rosemarie Rhodes* (signature)

**Rosemarie Rhodes,**
**Director**

June 22, 2020

*(Date Mailed)*

Enclosures(s)

cc: **Sally Swann**
**Interim Director of Diversity & EEO**
**MORGAN STATE UNIVERSITY**
**1700 E Cold Spring Lane**
**Jenkins Hall (BSSC), Rm 327**
**Baltimore, MD 21251**

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.   FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2.   AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.   PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.   ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions.  A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements.  You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**Timeline of events**

Dina El Mahdy (Complainant) vs. Morgan State University (Respondent)
September 18, 2020

| Date | Incident(s) |
|---|---|
| April 1, 2011 | The Complainant received an offer for an appointment of a tenure track assistant professor of accounting at Morgan State University. |
| August 10, 2011 | The Complainant's offer is Changed to a visiting professor of accounting and she was requested to find an immigration attorney and get herself a green card. The Complainant was subjected to harassment and abuse pending her green card processing and uncertainty around her visa documents, including but not limited to excessive service load related to the school and departmental assessment work, denied funding for travel to conferences and teaching classes with extremely low enrollments (2-3 students) and be told that she is getting paid and should do anything she is requested to do. |
| Between April 1, 2011-August 2018 | The Complainant was subjected to all kinds of harassment, abuse, and racial discrimination from the chairperson Sharon Gary Finney. The Chair refereed to the Complainant as a "foreigner", denied her access to database, made a derogatory and racial remarks about the Complainant's culture and background, claiming that the Complainant will share the database with her friends from her home country, denied the Complainant's request to teach in the PhD program, overburdened the Complainant with extra service load, and others. The Complainant reported most incidents regularly to Dean Boghossian who has been repeatedly advising that the faculty collectively should write a letter of no confidence against the chairperson. The faculty refused to do so because everyone is benefiting from the incompetency of the chair (that is exactly what the faculty Bilal Makkawi told the Complainant). |
| June 12, 2018 | The Complainant spoke to the chair about multiple teaching offers from Georgetown and American University. The chair did not care whether the Complainant will teach outside or not "many faculty are already teaching outside without authorization and the Complainant collected quantitative evidence regarding this fact", the chair's only condition to allow the Complainant to teach outside was that the Complainant does not mention these offers to the Dean because the chair believes that the Dean is abusing female faculty in insider service to the school. The internal policies require that the Dean must be informed with outside teaching. The Complainant was not aware of these policies, but she was prohibited from reaching out to the Dean. The chair confessed about not letting the Complainant speak to the Dean about these offers in writing. |
| June 20, 2018 | The Complainant was very uncomfortable to work on the university assessment committee due to unwanted advances from Dr. Solomon Alao, the Vice-President of Assessment at Morgan State University. On June 20, 2018, the Complainant was invited "in writing" by Dr. Alao to a conference that is fully paid from the MSU fund. The email reads "The National Institute for Outcome Assessment accepted our paper on outcome assessment. Are you free on October 20-23, 2018? I will take care of registration, hotel, and flight." There was no paper that the Complainant is working on with Dr. Alao, she was subjected to sexual harassment from him over the years and his conference invitation was unwelcomed. She told him that she received this email by mistake. He replied: "Not a mistake. Are you interested?" She refused to go with him. |

| | She felt scared from his next unethical bold move. Her involvement with Dr. Alao was related to performing assessment service to the MSU. |
|---|---|
| August 10, 2018 | The Complainant sent to the entire faculty an email on August 10, 2018 to politely requesting rotating the major service activities like the assessment among faculty for fairness and equality. |
| August 13, 2018 | The Chair insisted that the Complainant continues to work on the assessment and requested a private meeting on August 13, 2018, after which the Complainant was abused by the Chair and escalated the matter to the Dean. The chair blackmailed the Complainant and wrote tens of harassing emails to force to the Complainant to complete the work that is mainly the chair's responsibility. |
| August 15, 2018 | The Complainant complained to the former EEO officer, Ms. Tanyka Barber about the Chair's abusive language and harassment on August 15, 2018 in her office and Ms. Barber send an email to follow up. |
| August 15, 2018 | The Complainant spoke to the Dean that she is unable to work again with Solomon Alao in the university on the assessment due to the sexual harassment incident. The Dean instructed the Complainant to write an email to Dr. Alao that she is busy with research and is resigning from the assessment service work. No formal investigation into Dr. Alao's suspicious activities of using the university fund to invite female faculty to conferences was initiated. |
| September 4, 2018 | The Complainant wrote an informal complaint to the Dean on September 4, 2018 with the chair's long-standing racial discrimination, abuse of power, and harassment that was forwarded to the director of the HR as well as former EEO officer, Ms. Barber. |
| Early September 2018 (cell phone data are unavailable) | The chair used at least six faculty to harass the Complainant to continue to be abused by the system. On a one last phone conversation the Complainant had with Phyllis Keys (a colleague) sometime in September 2018, Phyllis Keys did mention that she did report the Complainant to the provost as working off campus unauthorized because she does not believe the Complainant is doing her job and everyone in the university is asking her about the assessment work. The Complainant last two performance evaluations in 2018 that came in August 2018 shows that she has "exceptional performance in service" by Sharon Finney. Likewise, in 2017, the performance evaluation shows that her average service score is extremely above the highest score of all faculty and the 2017 performance evaluation was done by Phyllis Keys who was an interim chair in 2017. It is important to mention that Phyllis Keys is fully aware that Dr. Solomon Alao, the vice president of assessment, is one of the reasons the Complainant resigned from the university assessment due to the reported sexual harassment against him that was never investigated due to his leadership position at MSU (documents are available upon request and already included in the investigation). Phyllis Keys did harass the Complainant during this last phone call in person and mentioned that she will not stop causing damage to the Complainant at the university level, claiming that the Complainant does not do her job and work outside. Phyllis Keys did mention to the Complainant and Dr. Makkawi (a colleague) that she will never mention Dr. Makkawi's outside employment to the administration because he is a "friend" of her. There are numerous complaints the Complainant filed against Phyllis Keys for direct harassment that were never handled because Phyllis Keys is above the law at MSU. The first complaint that the Complainant sent to the former EEO officer |

| | |
|---|---|
| | (Ms. Tanyka Barber) was against the chairperson and Phyllis Keys and that was in August 2018. |
| September 17, 2018 | The Complainant received a note on September 17, 2018 from the Dean that she was reported as unauthorized to work outside to the interim former provost, Anna McPhatter. The Complainant responded immediately that "Dr. Finney informed me as long as it is not a full-time position and outside of Maryland area it is fine. The Complainant informed Dr. Finney whether she needs to discuss these opportunities with the Dean of the school, Dr. Finney mentioned that there is no need to inform the Dean because she does not need a permission". The Chair did immediately make false statement that she did not authorize this employment as follows: "I was not aware that you are teaching three courses outside the University this semester. It is not included on your Activity Report. I do remember discussing something similar to this with you sometime during the summer or last semester, but I did not understand that you would be teaching three courses off campus in a single semester, for a total of six course? I did not encourage this. I remember advising against too much outside work, but I do not remember discussing three courses in one semester." This is the moment the Complainant realized that the Chair is very well informed with the discrimination complaint against her and started to take actions to retaliate. As the evidence in the rebuttal shows, the Complainant did discuss the authorization to work outside with the Chair in June 6, 2018 and the Chair did authorize it but further prohibited that the Complainant receives an authorization from the Dean. The Chair's behavior of denying the authorization to work outside only on September 17, 2018 along with harassing the Complainant was a clear-cut evidence of the Chair's knowledge of the discrimination complaint. The Complainant experienced severe anxiety and fear due to her knowledge with the false statements made by the Chair that was the beginning of more adverse actions by the Chair and the entire system at the Respondent against the Complainant just because the Complainant complained from racial discrimination "in writing" for the first time since joining MSU. |
| September 17, 2018 | On September 17, 2018, the Complainant applied for a sabbatical and only sent my application via an email to the chairperson Sharon Finney around 4 a.m. On the same day, Huey-Lian Sun came to the Complainant's office around 12:30 p.m. angry and blamed the Complainant for applying for a sabbatical leave, claiming that herself never took a sabbatical over her 20 years of employment at Morgan and that the Complainant will not be able to take a sabbatical before she takes one. That was very aggressive and instigated by the chairperson Sharon Finney because she did forward the Complainant's request for sabbatical to Dr. Sun and started this personal attack from Dr. Sun. The Complainant would like to add that during the semester of Fall 2018, Sheela Thiruvadi and Kang Cheng were both on sabbatical leaves because of the chair's discriminatory behavior among faculty. Sheela Thiruvadi did apply for full professorship rank in September 2018 while she is on a sabbatical leave, which is usually given to do research for promotion. The fact that Sheela did have her full professorship dossier ready by the beginning of her sabbatical is clear evidence she does not need it for research. |
| On September, 2018 | In September 2018, Heuy-Lian Sun (colleague) informed the Complainant that there are two female faculty who hate her in the department and reported her outside employment to the provost in collaboration with the Chair. Dr. Sun refused to mention |

3

| | the names. The Complainant called Dr. Makkawi who confirmed that these faculty are Sheela Thirvadu and Phyllis Keys. The Complainant was informed by Dr. Makkawi that Sheela Thiruvadi is cyberstalking v to know her whereabouts and Phyllis Keys is using her power in the administration to cause damage to the Complainant. |
|---|---|
| October 5th, 2018 | The Complainant continued to receive numerous harassing emails from the Chair to force her to work on the leadership of the assessment and at some point the Complainant wrote to the chair on October 5th, 2018 to stop harassing her and informed her "in writing" about the complaint of discrimination against the Chair. The Complainant send multiple emails, requesting help from the Dean, HR director and former EEO officer. No actions were taken whatsoever to stop the Chair from attacking the Complainant almost on a daily basis, which caused severe anxiety and depression to the Complainant and at some points she experienced life safety concerns when the retaliation by the Chair extended to an order of off campus staking, issuing an unfair letter of reprimands, removal from teaching in the graduate programs (ACCT 631), sending faculty to the Complainant office stating hate remarks and much more. |
| October 22, 2018 | The Complainant received a reprimand letter from the Chair "dated" October 20, 2018 but was "sent" by email on October 22, 2018. The reprimand letter is a clear act of retaliation that forced the Complainant to send another detailed complaint to the former EEO officer to instigate a formal investigation of abuse of power, discrimination and harassment based on the false information in the reprimand letter that was preceded by a two month long direct harassment by the Chair toward the Complainant. Each word and piece of information in the "retaliatory" reprimand letter was false. |
| October 22, 2018 | The complainant experienced severe anxiety and depression and requested a sick leave based on a medical certificate per her physician. The HR at MSU defamed the Complainant in the workplace and violated the HIPPA law by threatening to stalk the Complainant off campus and requested her immediate return to campus. |
| October 29, 2018 | The Complainant received threats of off-campus stalking by Asian faculty at the DC area. Dr. Bilal Makkawi informed the Complainant that the Asian faculty (without mentioning names) are stalking the Complaint in the DC area. During the first week of December 2018, the Complainant learned from the faculty Reining Pettachi at Georgetown that Kang Cheng from Morgan State University informed Reining Pettachi that the Complainant have problems in her workplace at Morgan that jeopardize her career. This information was utterly false and defamatory in nature. Kang Cheng in return told Dr. Makkawi that students are Georgetown are complaining from the poor performance of the Complainant. Kang Chang uttered defamatory information at both Morgan State University and Georgetown to ruin the Complainant's reputation in the DC area to retaliate on behalf for the chairperson. A police complaint was filed at MSU against Kang Cheng for off-campus stalking. The stalking was confirmed by the faculty Kang Cheng. A police report was made at MSU with # 1810-01623. The Complainant was forced to return to campus based on the stalking threats. |
| September 17, 2018 | on September 17, 2018, Alex Tang (a colleague) came to the Complainant's office the moment she received an email from the former Provost Anna McPhatter about outside teaching and the Complainant informed Alex Tang that the provost's email sounds like a plot/retaliation from the chairperson because of the racial discrimination complaint that was filed on September 4, 2018 at the Dean's office. Alex Tang threatened the |

| | Complainant that if she did not obey the chair in whatever she wants her to do from excessive service load, there will be even more negative consequences. He mentioned that MSU does not have policies that everyone should follow but the administration usually mentions policies when they attempt to cause harm to faculty. Alex Tang also did lots of awful things to the Complainant in order to support the chair over the past two years such as: encouraging his former PhD student Henry Mburu to put his name on the Complainant's published research work in an "A" level journal, delivering hate remarks on behalf of the Asian community in general in the department among other things. Alex Tang refused to stand against the chairperson when she started an endless round of attack towards the Complainant and he mentioned that "Jesus" said to protect the chairperson and he will do whatever it takes to protect her. The Chair created a hostile, hateful and a culture of extreme religious ideologies in the department to only benefit the chair's dominance in the department. |
|---|---|
| November 21, 2018 | After facing too many hurdles at the Respondent's corrupt environment that neglects sexual harassment and abusive behavior, the Complainant consulted with an employment attorney (Mr. Andrew Dansicker) who advised the Complaint to file a complaint with the EEOC (Commission, hereafter) that was officially submitted on November 21, 2018. The EEOC charges of discrimination are attached. |
| Between October XX (unknown), 2018 to November 15, 2018 | The chair deliberately excluded the Complainant from the departmental email listing. The chair wrote to the complainant this email: "On Thu, Nov 15, 2018 at 8:30 AM Sharon Finney <sharon.finney@morgan.edu> wrote: Dr. El-Mahdy is not being excluded from any departmental activity on purpose. Due to her false claim of harassment and discrimination, I have been instructed by the Provost to not communicate her." The Complaint was discriminated against and treated unfairly when she was deliberately excluded from receiving emails pertaining to the departmental activities. |
| February 27, 2019 | The chair removed the Complainant from teaching in the master's program ACCT 631 for fall 2019 and made a false claim that the Complainant requested to be removed from teaching in the master's program so that she works outside. The Complainant made numerous complaints that the chair threatened to remove her from the master's program, but all complaints were ignored by the EEO office at MSU. The EEO officer made numerous false claims in the position statement submitted to the EEOC, claiming that the Complainant requested to cancel the ACCT 631 and the Complainant rebutted those statements. |
| February 11, 2019 | Bilal Makkawi (a colleague) informed the Complainant on numerous occasions (almost every single time they talk in person or by phone) that everyone hates me, referring to the six above named faculty and of course the chairperson. On February 11, 2019, Dr. Makkawi told the Complainant that the Asian faculty said they will not hire someone from the Complainant culture again, that the Complainant is a troublemaker, and everyone hates her...etc. The Complainant complained to the Dean on the same day. Dr. Makkawi also told the Complainant that Dr. Tang praised the chairperson for writing me a reprimand letter by telling her "good job". Alex Tang also mentioned that Jesus wants him to protect the chairperson for good or bad and he will do anything to protect her in her position. |
| September 24, 2019 | An attempt by a former PhD student Dr. Henry Mburu, who was a student of Alex Tang who threated the complaint in the past, was made to steal a published work by |

| | |
|---|---|
| | the Complainant that was reported to the Commission. The Complainant reported the incident as violation to the ethics and integrity policies at MSU but no action was taken to resolve this issue or investigate this research misconduct to further cause mental anguish, pain and suffering to the complainant. |
| September 25, 2019-October 25, 2019 | The Complainant experienced severe anxiety and depression and was on sick leave again based on her physician medical note and advice. The HR department at MSU harassed the Complainant for over three weeks of her three weeks sick leave, claiming that the Complainant is faking up her sickness, demanding the Complainant to get examined by the State Director Medical Doctor and causing unbearable stress to the Complainant. The chair, on the other hand, took advantage of the sick leave and created a chaos in the classroom in one of the complainant classes. Students completely stopped coming to class during and after the Complainant's sick leave. Students claimed that the substitute instructor was sub-par and the substitute instructor complained from the barbarian behavior of students who attended the class during the Complainant's sick leave. When the Complaint returned back to campus, students were yelling at her to reteach the materials, open all homework assignments with no due date, acting like thugs in classrooms....etc. All administrators forced the Complainant in April of 2020 to create extra credit assignment for the entire class, reteach the materials, were very vulgar in attitude with her, blaming her that her sick leave is hurting the entire class (Dr. Lessane, the vice-president of academic affair at MSU was very rude, Drs. Emdad and Bogohssian were very loud in the conversation and abusive). The complainant is "always" denied the right to record any conversation that occurs at MSU. Eleven students received a grade higher than what they deserve because of this grade dispute. The Complainant submitted numerous reports showing that she has done her due diligence in class, but all reports were ignored, and she was stranded with abuse, loud voices, inhumane, and unfair administrators. This incident caused unmeasurable pain and suffering to the Complainant. |
| October 30, 2019 | The Complainant received the position statement of the Respondent from the EEOC. The statement was full of false statements, tampered evidence, and repeated statements (more than 23 paragraphs) about the Complainant's outside employment that was sued to retaliate from the discrimination complaint. The position statement of MSU is available upon request. |
| January 10, 2020 | The Complainant was given the opportunity to submit a rebuttal. A rebuttal statement with supporting documents were submitted on January 10, 2020. The rebuttal statement with supporting documents are available upon request. |
| March 4, 2020 | The Complainant received an email from the chair calling her incivil and liar for filing the federal government complaint. The Complainant forwarded the email to the administrators at MSU and requesting an investigation and a remedial action to stop the Chair from her never-ending abusive behavior. |
| April 12, 2020 | The chair sent out another lengthy email (+3 pages with an excel sheet attachment) accusing the Complainant again of being a liar, incivil and non-collegial with reference to my federal government complaint. These communications are available upon request. The Complainant again forwarded the email to the administrators and the EEO officer and requested an investigation into the chair's abusive and defamatory actions. The Complainant also requested a no contact from the chair. The associate dean Ali Emdad was appointed by the provost Lesia Crumpton Young as an intermediary |

| | |
|---|---|
| | between the Complainant and the chair for any departmental communications. The Complainant was requested by the provost to attend the departmental meeting and interact with the chair as part of my duties. The provost refused that the Complainant records the departmental meetings. |
| April 15, 2020 | The EEO officer at MSU sent the Complainant notice of outcomes of the internal investigation clearing out the chair from any wrongdoing (racial discrimination, abuse, or harassment) or for incidents that occurred in 2018 and 2019. This notice is available upon request. The Complainant requested investigating incidents that occurred in 2020, the EEO officer responded that they will be investigate separately. As of today, September 18, 2020, the Complainant did not receive any reply from the EEO officer at MSU. |
| May 4, 2020 | The chair continued to harass the Complainant non-stop again through multiple channels. For example, the student who took the Complainant's ACCT 201 class in fall 2019 and failed with a grade communicated with the Complainant and the chair was copied in the email. The student requested that the Complainant reopen the homework assignments for him to redo them. The Complainant refused to give the student any further credit, given that the class ended almost five months ago. The student failed to meet the class requirements. The student filed a grade dispute, and the chair and all administrators collude to change his grade although it is a violation of the Complainant's class policy. The students failed to complete 30% of the class requirements. Again, the administrators were very disrespectful to the Complainant's class policy, university policy, and all over the Complainant's with their threatening attitude as having an upper hand as a management team to have the discretion to do anything as they wish. The Complainant believes that was a direct harassment. The Complainant raised this issue as an unethical grade dispute and harassment on May 14 during the last departmental meeting among faculty. None of her colleagues are experiencing similar incidents. The complainant continuously complained to the president of MSU, Dr. David Wilson, in writing, tried to reach out by phone, but Dr. Wilson never responded or addressed any unethical, racial, discriminatory, or retaliatory actions. The complainant also tried to speak and arrange for a meeting with the current provost, Dr. Lesia Crumpton Young, but was never allowed. The provost can reach out to the complainant for any matters related to students but the complainant is not allowed to reach out to communicate with the administration to resolve and stop the common practices of racism, discriminatory and retaliation at MSU. |
| May 7, 2019 | On May 7, 2019 around 2:30 p.m., Yu Cong (a colleague) informed the Complainant during a meeting in his office about a research project they were working on that everyone hates the Complainant in the department and that she must leave MSU. He mentioned that the faculty will try to buy out the Complainant and give her some money. He said she should save this money because she will not find another job and she would need to save money to feed my kids. He was very arrogant, rude, and aggressive in tone. He did cause too much damage with his talks given that he was always against the chairperson's abusive behavior over the years and was on the Complainant's side when she complained about the abusive behavior of the chairperson. May 7, 2019 was the Complainant's very first time that Yu Cong spoke to her with such a tone. She learned later that the chairperson offered her colleague Yu Cong a full professorship promotion and that was the reason for his attack. On May 9, |

|  | 2019, there was a departmental meeting where Heuy-Lian Sun attacked the Complainant when she expressed an interest in teaching in the PhD program to retaliate for Yu Cong's aggressive behavior. On May 7, 2019 at 5 p.m., the Complainant reported Yu Cong's hate remarks to the Baltimore - FBI and later to the Dean in writing on May 8, 2019 and requested "no contact" from Yu Cong. She also reported Dr. Sun's attack to the Dean on May 9, 2019 (documents are available upon request). |
|---|---|
| May 14, 2020 | During the last departmental meeting, the chair made the announcement that she will not issue the Complainant a performance evaluation report for the second year in a row (year 2018-2019 & year 2019-2020) and that the Complainant should consult with the Dean related to this matter. The Complainant sent the Dean an email, but he never replies (as usual). |
| May 20, 2020 | The Complainant filed another complaint at the EEO office at MSU (the complaint is available upon request) for her summer teaching class that was cancelled after having the required enrollment and then relisted again with no enrollment. These actions of canceling and relisting were deliberate by the chair and provost and resulted in dumping the students from the Complainant's class. This specific summer, the pay scale will increase from 3K to +5K (by +2K per class). The Complainant will be the only accounting faculty in the department who will be excluded from summer teaching. The Complainant complains from the unfair treatment related to summer teaching almost every year among other racial and discriminatory issues. The Complainant also complained from the deliberate exclusion from receiving performance evaluation reports over the past two years. As of today, none of the discriminatory, retaliatory, or abusive actions committed by the defendants has been addressed or resolved. |
| On June 17th, 2020 | The Complainant discussed the excessive delay in resolving the case by the EEOC with the federal investigator Mr. Victor Owolabi who concluded the case without an investigation and issued the Complainant the "Right to Sue" letter that was dated June 22nd, 2020. |
| On August 3rd, 2020 | The Complainant retained the attorney Ms. John Singleton who sent a letter to the defendants (MSU) to discuss and resolve the discriminatory and retaliatory common practices at MSU outside the court system but there was no official response from MSU to this letter as of today September 18, 2020. The complainant was advised by the current EEO officer at MSU, Ms. Tara Berrien, to take whatever actions she deems fit. The complainant exhausted all alternatives and civilized ways to stop MSU from violating the federal government rules and regulations and the court system is the only option to further escalate these matters to. The complainant has a firm belief that no human being (regardless of color, race, nationality, gender, or age) should have endured the "emotional torture" and "mental anguish" she had endured from racism, discrimination, and retaliation. |



8

**Singleton Law Group**

PARKTON, MARYLAND 21120

TELEPHONE: 410.902.0073      FACSIMILE: 410.357.3804

John M. Singleton, Esquire (Md)
*jsingleton@singleton-law.com*

Kimberly Singleton, Paralegal
*ksingleton@singleton-law.com*

August 3, 2020

*Sent via US Mail and electronic mail to: sally.swann@morgan.edu*

Sally L. Swann, Esquire
Interim Director of Diversity and EEO
Morgan State University
New Jenkins Building
1600 Havenwood Road, Rooms 326 & 327
Baltimore, Maryland 21251

Re:  Dina El Mahdy

Dear Ms. Swann:

Please be advised that I have been retained by Dina El Mahdy to communicate with you regarding ongoing problems related to her employment with Morgan State University (herein "the university" or "MSU").  As you know, Dr. El Mahdy filed a charge of discrimination and retaliation based on sex and race/national origin with the EEOC in November 2018 and has also submitted numerous complaints to your office.

Dr. El Mahdy is currently employed as a tenured associate professor of accounting.  During the course of her employment, the chairperson of the accounting department, Sharon Finney, has waged a continuing campaign of harassment against my client by subjecting her disparate treatment based upon her sex and race/national origin, denying her opportunities to teach in desirable programs, sending her hostile emails, issuing unfounded letters of reprimand, and refusing to conduct yearly evaluations of my client's performance. This is all in addition to other incidences of inappropriate and retaliatory conduct too numerous to mention in this letter.  My client alleges that Dr. Finney has even gone so far as to recruit numerous other faculty members within the department to participate in the harassment and my client has made complaints to the Dean and the EEO office about many of these incidences as well.

Recently, Dr. Finney sent an email communication to Dr. El Mahdy in which she inappropriately addressed the allegations in the charge of discrimination filed with the EEOC,

called her a liar and accused her of being "uncivil and non-collegial" by virtue of having made the allegations. To the extent that Dr. Finney was referring to Dr. El Mahdy's claims of discrimination, this type of direct communication to an employee by a supervisor related to a charge filed with the EEOC can only be construed as retaliation and must be prohibited and prevented by the university. On my client's behalf, I request that you take immediate steps to prevent Dr. Finney from addressing the allegations of discrimination directly with Dr. El Mahdy and that she be instructed to convey all departmental communications through the intermediary appointed by the provost. Further, it is our request that you permanently prohibit Dr. Finney from harassing my client and defaming her good name in any manner, both within and outside of the university, including sending her harassing emails, instructing other employees to harass her, taking unfounded action against her and otherwise creating a hostile work environment.

But for the problems with Dr. Finney and her underlings, my client genuinely enjoys teaching at MSU and generally has a good rapport with her students. She wants nothing more than to continue in her position unmolested by Dr. Finney, and to receive equal treatment and opportunities within the accounting department.   If for some reason the university is unable or unwilling to comply with this request, please contact me at the number above. Although she has no interest in taking further action against the university, I do intend to advise my client of all remedies available to her.

Very truly yours,

John M. Singleton

JMS/kgs
cc: Dina El Mahdy

2