# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DINA EL MAHDY | * | |
| Plaintiff | * | |
| v. | * | Case No. 20-CV-2715SAG |
| MORGAN STATE UNIVERSITY | * | |
| | * | |
| Defendants | | |
| | * | |

\* \* \* \* \* \*       \* \* \* \* \* \*

## FIRST AMENDED COMPLAINT

Pursuant to Rule 15(a)(2) of the Fed. R. Civ. P. Plaintiff, Dina El Mahdy, by and through her undersigned counsel, having secured the written consent of Defendant, submits this First Amended Complaint and states, and alleges

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e to 2000e-17 (the "Act") to obtain restitution and relief for acts of discrimination and retaliation against Plaintiff, by Defendant, throughout Plaintiff's career as a tenured professor with Morgan State University (the "University").

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 42 U.S.C. §§2000e-5(f) and 2000e-6, and 28 U.S.C. §§1331 and 1345.

3. Venue is proper in this district under 28 U.S.C. §1391.

## PARTIES

4. Plaintiff is Dr. Dina El Mahdy, an associate professor of accounting who is currently employed by the University. The University has employed her since August 2011. Plaintiff holds a Ph.D. in accounting at Virginia Commonwealth University. Plaintiff was born and raised in Egypt and self-identifies as Egyptian-American.

5. Defendant is Morgan State University, a public historically black research university located in Baltimore, Maryland.

## FACTS

6. Dr. Sharon Finney ("Finney") is the chairperson of the accounting ("Accounting") and finance departments at the University. Finney is Plaintiff's direct supervisor. Finney reports directly to the Dean of the accounting department, Fikru Boghossian (the "Dean").

7. Some of Finney's responsibilities as the chairperson of Accounting with regard to the professors and support staff that work in Accounting include, but are not limited to, distribution of service assignments, scheduling and class assignments, outside (the University) employment by professors, and discipline.

8. As a supervisor, Finney is familiar with University policies, including policies specific to civil rights, equal employment, sick and family medical leave, harassment, and retaliation. Finney is aware that there are reporting protocols the University must adhere to regarding complaints related to civil

rights, employment discrimination, disparate treatment, sick and family medical leave, sexual harassment, and retaliation.

9. As both chairperson and a supervisor of Accounting, Finney is familiar with University policies, including policies specific to employees outside employment, class cancellation and rescheduling, class numbers and attendance, and grading policies that specifically allow professors to have their own internal class policies.

10. As chairperson of Accounting, Finney can assign certain classes to certain professors, cancel, or reschedule classes, allow or disallow professors from teaching certain classes or at certain times, adjust professors' schedules, include or exclude professors from the Ph.D. teaching programs, and discipline professors in keeping with University policy.

11. Accounting has a mass email messaging system (the "Email Chain") that is used to disseminate critical information to the professors and staff of the department. Finney can include or exclude professors or staff from this email delivery mechanism.

12. Professors and staff use a University database, specifically the Accounting Database (the "Database") for Accounting, to conduct research. Finney can include or exclude professors and staff from the Database.

I. **Discrimination**

13. On February 4, 2016, Finney refused to allow Plaintiff access to the Database, because Plaintiff is a foreigner and may share the data in the Database with her (Plaintiff's) friends in Egypt. Plaintiff's national origin was the primary reason why her access to the Database was delayed.

14. Dr. Solomon Alao ("Alao") is the Vice President in charge of the University assessment service (the "Assessment"), and Finney assigned Plaintiff to work under Alao.

15. Over the years of Plaintiff's working on the Assessment, Alao has made various sexual advances and suggestions to Plaintiff. Plaintiff has refused to participate, and these instances became sexually harassing.

16. On June 20, 2018, Alao invited Plaintiff to take an out-of-state trip with him to present a paper allegedly written by Alao and Plaintiff at the National Institute of Outcome Assessment from October 20 to October 23, 2018. Alao asserted, in an email, that the University would pay for the trip.

17. Plaintiff had written no papers with Alao and recognized this as invitation to a sexual rendezvous, continuing the sexual harassment of Plaintiff.

18. On or about August 15, 2018, Plaintiff filed a verbal, informal complaint of sexual harassment with the Dean. The Dean failed to communicate a report of sexual harassment to the University EEOC Officer or H.R.

19. The University conducted no formal or informal investigation into Plaintiff's complaints, nor was any action taken with regard to Alao's sexual harassment of Plaintiff.

20. The Dean advised Plaintiff that the best way to deal with Alao was to email Alao resigning from Assessment work because Plaintiff was "busy." By so doing, the Dean was advising Plaintiff, in his capacity as her supervisor, to sweep the matter under the rug and find an excuse to avoid being around Alao.

21. Dr. Phyllis Keys ("Keys") is a colleague of Plaintiff who worked on the Assessment for a time. When Keys requested that she be removed from the Assessment, Finney complied and transferred all Keys' work to Plaintiff.

22. On August 10, 2018, Plaintiff requested that other faculty be rotated into assisting with the Assessment. Plaintiff did this knowing that in the past, Keys had been permitted to be relieved from working on the very same assignment as Plaintiff was requesting relief from.

23. On August 13, 2018, Finney insisted that Plaintiff continue to work on the Assessment, denying her request for rotating out and denying her request to resign. The only difference between Plaintiff and Keys is Plaintiff's national origin.

24. Throughout her career at the University, Plaintiff has consistently been appointed to more boards and given more service projects than her non-Egyptian colleagues and was not permitted to resign despite allegations of sexual harassment against the vice president in charge of the Assessments.

25. Plaintiff is the only faculty member of Accounting who has received a cease and desist for teaching outside of the University (Received from Finney on

October 1, 2018) despite Finney's acknowledgment that other (non-Egyptian) faculty members were actively teaching off-campus and Finney was aware of these activities.

26. During the academic year 2018-2019, two professors, Dr. Sheela Thiruvadi and Dr. Kang Chen, were on sabbatical from the University. However, when Plaintiff requested a sabbatical to deal with the scheduling issues caused by Finney's withdrawal of approval for Plaintiff to teach off-campus on September 17, 2018, Plaintiff was denied.

27. In May 2020, Plaintiff's summer classes were canceled, making Plaintiff the only faculty in Accounting not permitted to teach a summer class.

28. Plaintiff was never given any financial compensation in return for her service to the departmental and school assessment committees, while other faculty were compensated in various ways.

29. Plaintiff is the only professor in Accounting who has not received an annual evaluation for the last two (2) years, making her ineligible to apply for certain grants while also affecting her ability to get promoted or to get a raise.

II. **Retaliation**

30. Plaintiff approached Finney on June 12, 2018, to discuss an opportunity to teach outside of the University at Georgetown and American University and was granted permission with no caveats other than Plaintiff does not inform

the Dean, contrary to University policy. Plaintiff complied with Finney's request not to speak with the Dean and accepted an offer to teach at Georgetown and American University, where classes began in August 2018.

31. On September 4, 2018, Plaintiff wrote an email containing an informal complaint alleging bias, racial discrimination, abuse of power, and harassment by Finney, to the Dean.

32. The Dean forwarded Plaintiff's email to the director of Human Resources ("H.R.") for the University, Amanda Grant, and the EEO Officer, Ms. Barber.

33. On September 17, 2018, Finney emailed Plaintiff a "cease and desist" letter. In the letter, Finney stated that Plaintiff was in violation of University policy number 3.14 and that in the future, all off-campus teaching was to be approved during the semester preceding the semester of teaching.

34. Finney, less than two weeks after the Plaintiff's complaint, reversing her (Finney's) earlier approval of Plaintiff's off-campus teaching by claiming that when Plaintiff approached her to get permission, she (Finney) did not understand that Plaintiff intended to teach three courses off-campus and further states that had she (Finney) been aware she would have discouraged Plaintiff from doing so much work. The withdrawal of approval by the Accounting chairperson, while other professors continued to teach multiple classes off-campus, following a discrimination complaint against her (Finney), was intended to punish Plaintiff for filing a complaint and to discourage any further such complaints.

35. On September 17, 2018, Finney further denied Plaintiff's request for a sabbatical using her authority to deny Plaintiff one of the privileges of her (Plaintiffs) employment as a punishment for filing a discrimination claim.

36. In her October 1, 2018, email Finney admits that she knows of other faculty who have taught off-campus without permission. Plaintiff is the only faculty to have received a cease and desist based on teaching outside of the University and only after filing a complaint alleging discrimination. The cease and desist was designed to punish Plaintiff for her complaints and discourage any further complaints against persons who could jeopardize Plaintiff's career, ability to teach, and livelihood.

37. On October 5, 2018, Plaintiff requested by email that Finney stop harassing her, cc'ing the Dean, HR, and EEO Officer. In the same email, Plaintiff informed Finney that she (Plaintiff) had filed a complaint against Finney for discrimination, harassment, and abuse of power.

38. On October 22, 2018, Finney wrote a reprimand letter in which she accused Plaintiff of being "non-collegial" while specifically referencing the EEOC complaints made by Plaintiff against Finney. The use of the chairperson's authority to officially and formally reprimand a subordinate for filing a discrimination complaint can only be interpreted as an attempt by the chair to intimidate the Plaintiff and to discourage further complaints, of such nature, against the chair. By referencing the complaint itself, Finney herself makes it clear that the reprimand was in retaliation to Plaintiff's complaints.

39. The October 22, 2018, reprimand letter was placed into Plaintiff's personnel file and made part of her permanent records at the University.

40. In October 2018, Finney further retaliated against Plaintiff by removing Plaintiff's name from Accountings Email Chain, denying her (Plaintiff) access to critical information required to do her job.

41. In October 2018, Finney responding to an inquiry about the removal of Plaintiff from the Email Chain by referencing the EEOC complaint filed by Plaintiff, referring to the complaint as false, and stating that the complaint was the reason for Plaintiff's removal from the Email Chain as the University provost had ordered Finney not to communicate directly with Plaintiff. Again, Finney's reference to Plaintiff's discrimination complaints makes it clear that her (Finney's) actions are in response to and in retaliation for Plaintiff's complaints of discrimination.

42. On February 27, 2019, Finney removed Plaintiff from a master's program class (ACCT 631) despite Plaintiff's protesting that such moves were retaliatory. The use of her (Finneys) position and power to take away something from Plaintiff demonstrates that Finney intended to punish Plaintiff for complaining and coerce Plaintiff against complaining in the future.

43. Between September 25, 2019, and October 25, 2019, Plaintiff requested medical leave based on the advice of her medical provider. Plaintiff provided a doctor's note to that effect to the University.

44. During her absence, Plaintiff was repeatedly contacted by H.R. H.R. accused Plaintiff of faking her illness and demanded that Plaintiff be examined by a doctor of the University's choosing.

45. On March 4, 2020, Finney again emailed Plaintiff, cc'ing multiple people, calling Plaintiff uncivil, and stating that Plaintiff was a liar for filing a complaint with the Equal Employment Opportunity Commission (the "Agency"). As a supervisor and chairperson of the department, Finney's calling Plaintiff a liar in a public forum was designed to humiliate Plaintiff in the eyes of her colleagues and to invite further discrimination. Such actions on the part of a supervisor who controls many aspects of the professors' careers would instill fear in others who might complain in the future that they too might be subject to public humiliation.

46. On April 12, 2020, Finney again emailed Plaintiff, cc'ing multiple persons, a lengthy email rebutting Plaintiff's complaint and providing an excel spreadsheet of instances where Finney alleged Plaintiff was lying or being non-collegial. The April 2020 email echo's the language used in Finney's October 22, 2018, reprimand letter by referring to Plaintiff as non-collegial for filing complaints of harassment.

47. Finney's emails and communication with other staff where she repeatedly referenced the discrimination complaints and called Plaintiff a liar were deliberate actions used to send a clear message that complaining was unwelcome and risky for any person working in Accounting.

48. On April 15, 2020, the University EEOC officer cleared Finney of all wrongdoing while an investigation was still ongoing by the Agency.

49. On May 4, 2020, Finney, with the support of the University administration, overturned Plaintiff's failing of a student who had failed to turn in 30% of graded assignments and who desired to complete homework five (5) months after the class had concluded. Reversing a tenured professors' in-class policy on grading to pass a student who did not do the work, while said professor has a standing EEOC complaint against the University and Finney, is an example of further actions to humiliate and discourage Plaintiff's complaints and ensure that she knew not to complain again.

50. University evaluations and chairperson recommendations are used in the evaluation process and are directly tied to raises, promotions, and professor's ability to obtain research grant funding.

51. On May 14, 2020, Finney announced at a departmental meeting, attended by all professors in the department, that she would not be issuing an annual evaluation of the Plaintiff and advised Plaintiff to consult the Dean. The announcement could have been made in private or through the Dean. Instead, Finney used the opportunity as a veiled threat to anyone who may have a discrimination complaint against her (Finney)—making such a complaint could result in financial punishment by not having an annual review.

52. The Dean failed to evaluate Plaintiff, who has now gone two (2) years without an annual evaluation which is differential treatment and, in and of itself, discriminatory. Further, the University's failure to evaluate Plaintiff for two years makes her ineligible for promotions and raises and unable to apply for research grants.

53. The May 2020 cancellation of Plaintiff's full summer classes, which were then reopened with significantly lower enrollment, continued a pattern where Plaintiff was punished for her discrimination complaints.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1. Grant judgment in favor of the Plaintiff and declare that the Defendants have violated Title VII of the Civil Rights Act of 1964, and its accompanying regulations;

2. Award the Plaintiff:

    a. Equitable Relief, requiring the Defendants to remove the October 2018 reprimand letter from the Plaintiff's personnel file;

    b. Compensatory damages for the loss of teaching hours both inside the University and off-campus;

    c. Compensatory damages for pain and suffering in the amount of $1,00,000.00;

    d. Punitive Damages in the amount of $5,00,000.000; and

    e. Costs of suit;

3. Award such and other relief as the Court may deem proper.

## **<u>Jury Trial Demand</u>**

Plaintiff hereby requests a jury trial on all issues so triable.

Dated: 09/21/2021                              Respectfully Submitted,

/s/ Donald Quinn
Donald G. Quinn, Fed. Bar No. 22324
Quinn Law Group
1629 K Street, Suite 300
Washington, D.C. 20006
(202) 508-3644
donquinn@thequinnlawgroup.com
*Attorney for the Plaintiff*

Case 1:20-cv-02755-SAG Document 70-1 Filed 09/21/21 Page 13 of 14

## **CERTIFICATE OF SERVICE**

I certify that, on this 21st day of September 2021, the foregoing was served by CM/ECF on all registered C.M.F. users.

/s/ Donald Quinn
Donald G. Quinn