IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DINA EL MAHDY | * | CIVIL ACTION |
| | * | 1:20-cv-02715-SAG |
| Plaintiff, | * | |
| v. | * | |
| SHARON GARY FINNEY, | * | |
| AND MORGAN STATE UNIVERSITY | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MOTION TO OPPOSE THE COUNSEL OF THE PLAINTIFF'S MOTION TO WITHDRAW FROM THE PENDING LAWSUIT**

COMES NOW the plaintiff, Dina El Mahdy (hereinafter "El Mahdy"), currently represented by the attorney Don Quinn ("the attorney") and present her motion to Oppose the attorney's motion to withdraw from the current pending lawsuit (ECF 85), rebuttals the contents of the attorney's termination letter (ECF85-1), and request that he remains on her case until the summary judgement stage is finalized.

The plaintiff hereby requests that the court issue a decision in favor of the plaintiff's current need for a representation as her case gets closer to the summary judgement and it became impossible to find another counsel at this stage of the litigation without incurring undue financial and non-financial hardships including unnecessary delay in justice. In support of the present motion, the plaintiff states the below facts:

1. The Plaintiff provided accurate and truthful information to the attorney during the entire litigation.

2. The Plaintiff paid in full all out-of-pocket cost and fees necessary for the litigation, including but not limited to deposition fees.

3. The Plaintiff adhered to all applicable local rules such as federal rules of civil procedure ("FRVP"), and all applicable Federal and State laws. The Plaintiff never requested from the attorney to violate any law in writing or orally.

The Plaintiff further rebuttals each paragraph of the attorney's termination letter and provides written evidence that support her rebuttal as shown below:

I. <u>My decision to do so is, in part, due to not being provided with accurate and complete information as stated in section seven of our agreement. "Client at all times must provide Firm with accurate and complete information" – something that you failed to do when describing the events surrounding your sick leave.</u>

The Plaintiff did inform the attorney about all aspects of her litigation in oral and provided all supporting documents, including her sick leave. The attorney did ask the Plaintiff again in writing about the circumstances surrounding her first sick leave on October 22nd, 2018 (the day the chairperson wrote her the vicious reprimed letter). More specifically, the attorney asked the Plaintiff this question on December 6th, 2021 at 10:46 am:

*"With regard to Amanda Grant, the question remains - were you continuing to work at a different university during the time that you were claiming* sick leave *from MSU?*

And the Plaintiff responded in writing to the attorney on December 6th, 2021, at 12:20 pm and stated the following:

*"3. I didn't stop working during the sick leave I requested the day I received the reprimand letter on 10/22/2018. I was harassed continually to return back to campus. Specifically, during this week I took a large group of accounting students from MSU to a field trip to visit a regulatory institution in DC although I was placed under extreme conditions of anxiety from the daily harassment of Finney. I may have missed one class the day following or the same day of receiving the reprimed letter because I was totally and mentally unable to function. I did not go to my outside employment during this day, students had an exam this week and someone else "tutor" from this outside university administered the exam. This is the day I took MSU students to DC. So, technically MSU DID not allow me to have sick leave and put me under the direct*

*attack of Finney"*.

The above exact facts that were shared by email with the attorney from the plaintiff were reiterated by the Plaintiff again in her deposition (ECF86-2).

> II. <u>You told me that Morgan State was harassing you while you were on sick leave, something I included in the Complaint, but admitted during depositions that you were at a conference with students – something you were shown photographic evidence of. Furthermore, you admitted during depositions that you were unsure if you were teaching at Georgetown and American Universities while out on sick leave. You told me that you were too sick to leave the house, much less teach (ECF86-1).</u>

The Plaintiff did include in the discovery materials a picture with her students during a field trip she organized on October 25, 2018, for only Morgan State University and American University students, Georgetown University students were not invited as the attorney claims. The Plaintiff was not in a conference as the attorney claims. The attorney was with Morgan State University on a tour bus that she paid from under her name from Baltimore to Washington, DC round trip. A picture from the trip was shared with her attorney and the counsel of the defendants during the discovery stage and earlier during the litigation (El Mahdy bates No. 0002407) (ECF 86-3). The counsel of the defendants used a very dark (unclear) print out of the picture that the Plaintiff did not recognize as she indicated in her deposition (ECF86-2). The Plaintiff was not in a conference during this day or withheld any material information from the attorney as the attorney claims in his termination letter. The Plaintiff does not need to take sick leave to go to a conference as conferences are as important as teaching and are allowed by the university whether the plaintiff is sick or healthy. The Plaintiff informed the attorney that she was forced to come back to campus the second day she took the sick leave on October 22nd, 2018, which is the day the chairperson Sharon Finney retaliated against the plaintiff by issuing the latter unfair and vicious retaliatory reprimanded letter. The Plaintiff reiterated that she received threats of off-campus stalking if she

3

did not come back to campus and she did file a police report with these threats of stalking. The attorney decided to remove these facts from the litigation although they cause trauma to the Plaintiff until this day. The Plaintiff informed her attorney with the stalking threats during her sick leave, and they are included in ECF No. 1-1, page 11 when she was Pro Se at this time. The attorney's claims that the Plaintiff provided him with inaccurate information about her sick leave are false, extremely damaging to her reputation, and the outcomes of this pending litigation. No lawyer accepted to represent her based on the unreasonable personal attack on the character of the Plaintiff by the attorney, which violates the lawyers' and Model Rules of professional conducts 1.3: Diligence, *"A lawyer shall act with reasonable diligence and promptness in representing a client."* The attorney's is responsible for performing his due diligence in understanding the circumstances and facts in the litigation. The Plaintiff fulfilled her duties by providing accurate and as detailed information as she possibly can.

The second sick leave the Plaintiff took on September 25, 2019, is the one where she was too sick and was bed ridden the entire three weeks after experiencing a series of retaliatory acts by the chairperson and her team the hostility she created in the workplace. A published paper in B+ journal was about to be stolen by a student of a faculty who already harassed the plaintiff and that was the reason of the second sick leave. The Plaintiff took two sick leaves since she joined MSU, both were in response to the direct acts of harassment and retaliation and were intended to work on maintaining her mental health, well-being, protecting her safety and the safety of others who strived to cause mental anguish to the Plaintiff on a continuous basis. The sick leave the Plaintiff took in 2018 and 2019 were requested based on the intolerable hate remarks and personal attack on a frequent basis by the chairperson Sharon Finney over a very long time that caused trauma. The Plaintiff was harassed during both sick leaves' requests, accused by the HR director that she is faking her sickness, and ordered to come back to campus in her first request otherwise she will

be stalked off-campus. The Plaintiff was ordered again by the HR director at Morgan State University in her request for a second sick leave to visit the State Medical Director for no valid reason, other than the claims by the HR director that the Plaintiff is faking her sickness. This information was provided to the Court, attorney, and the counsel of the attorney since the beginning of the litigation. All these facts are known and documented since the first day of litigation.

III. <u>In depositions your refused to take my advice or counsel on providing short answers, and continued to defend that position via email even when it became apparent that not following my advice was going to result in additional deposition time being necessary. I tried to avoid having to go before the Court and oppose the guaranteed Motion to Compel because I believe, and advised you, that the AG would succeed in compelling you. In response you accused the judge of being biased1 and me of not being on your side (ECF86-1).</u>

The counsel of the defendants deposed the plaintiff for 6 hours and 22 minutes on February 18, 2022 (ECF 86-4). The Plaintiff never requested a break; the counsel of the defendants requested "all" breaks per the copy of the deposition that the Plaintiff had to purchase and cite in this motion, the break time amounted to one hour and 6 minutes. The plaintiff provided the answers that achieve justice and to the best of her knowledge, she strived to provide accurate answers. The counsel of the defendants worded most deposition questions in the manner that if the Plaintiff said yes or no, the deposition answers will be misrepresented and ultimately the court will be misled. The attorney advised the Plaintiff to say yes or no but the Plaintiff found that half the question should be "yes" and the other half should be "no" but the Plaintiff could not due to the wording of the question. There is no discovery rule in the federal rules of civil procedure ("FRVP") that forces any deposed

---

[1] See Email from Dina El Mahdy Dated 02/22/2022 at 1:53 AM.

litigant to only say yes or no. The counsel of the defendants repeatedly[2] asked the same question numerous times. The Plaintiff did not violate any law by speaking the truth under Oath during the deposition. The below conversation is part of the deposition as evidence of how much time was wasted by the AG:

Mr O'Connor (the AG office): Q Okay. But sitting here today you don't recall exactly how many times?
MR. QUINN: Asked and answered, counsel.
MR. O'CONNOR: Counsel, I'm sorry, I don't think it has been. And I'm not trying to be difficult. I just --
MR. QUINN: I'm not either but she said like **three** times I don't recall and we keep asking if she recalls. So that's fine. Put an objection on the record. But of course you may answer. You may answer.

Most questions were asked 3-5 times, and repeatedly to harass the Plaintiff and force her to change her answer and ultimately be accused of lying under Oath. The Plaintiff had to be very diligent in her reply.

IV. This created a fundamental disagreement between us.3 You then blamed me for the necessary extension of deposition time. As I repeatedly explained to you, the additional deposition time was necessary to a) allow the Defendant access to evidence in the form of testimony, and b) for me to get a full direct examination of you on the record prior to going into summary judgement motions. Your refusal to be available for additional deposition, as requested and advised by me, is you making yourself unavailable for depositions in violation of §7 of our Agreement (ECF86-1).

The Plaintiff approved 2 hours for the counsel of the defendants to depose her under the assumption that they only deposed her for 5 hours while she was actually deposed 6 hours and 22 minutes as shown in (ECF 86-4). All breaks were requested by Mr. James O'Connor. The Plaintiff has no

---

[2] The AG attorney, for example, asked this question with multiple versions as follows: (1) Okay. So why did you decide to go with Morgan? (2) Okay. So why did you decide to go with Morgan? (3) Q And I'm sorry with the drill. Could you say the last part of what you said again? I couldn't hear you.(4) Q Okay. Thank you. So there was a family consideration -- sorry. So there were the family considerations. There was the fact that it had a Ph.D. accounting program. Any other factors that came into your decision to go with Morgan?

[3] MD Rules Attorneys, Rule 19-301.2 (Comment 2)

problem getting deposed for 7 continuous hours for one day, but not two 14 hours of deposition. Receiving threats to be deposed for a total of 14 hours just because Mr. O'Connor does not *"feel"* he gets what he wants is unfair and a causes mental anguish to the Plaintiff. She urged the attorney numerous times in a respectful manner to defend her position and stand up for her rights.

The Plaintiff wrote to the attorney the following on February 24th, 2022 at 9:12 pm:

*"There was no agreement orally or in written about two days deposition. I am extremely busy with work and have a host of health conditions that prevent me from going through this over and over against my will. Meanwhile, a second-day deposition will double the fees that you charge for representing me during the deposition. This is an undue cost that I did not authorize or find reasonable".*

The Plaintiff's reasons to oppose the second day of deposition was for her (1) sever anxiety from the brutal way she has been treated since 2018 when she exercised her rights, engaged in protected activities, and spoke about discrimination and, (2) her very busy work schedule. The Plaintiff works 10-12 hours a day, including weekends. The attorney should not create hardship on the Plaintiff if the law already mandates 7 hours of deposition. The Plaintiff did not violate the law or violated §7 of her contract Agreement with the lawyer. The Plaintiff would have never faced such brutal discrimination in her home country. Like many decent immigrants, she came to excel and prosper, live the American dream. The experience she has been enduring for five years is incapacitating. She has been living the worst years of her life and is completely traumatized. Further, excerpts from the deposition and sample questions were included to show the Honorable court that the AG wasted the deposition time, and the Plaintiff should not make up for their abuse. The Plaintiff's mental health should be a priority during the litigation per MD Rules Attorneys, Rule 19-301.14.

> V. <u>By forcing the Attorney General to limit the remaining deposition time to 2 hours, you also force us to abide by that limitation and provide no time for counter arguments or direct</u>

<u>examination. At your demand the notice says 2-hours and there is no legal recourse that would allow me to then extend that time for direct examination (by me) without also allowing Mr. O'Connor more time for his questions. These decisions by you in opposition to my repeated counsel has rendered the representation unreasonably difficult by the you (the client) (ECF86-1).</u>

The Plaintiff did not oppose to be cross-examined by the attorney. The Plaintiff answered a question posed by the attorney on March 7th, 2022, at 8:49 pm via an email and stated the following:

Attorney: 2. Are you willing to extend the deposition length (beyond 2 hours) to allow me a direct examination?
Plaintiff: I would not mind extending the deposition length to allow a direct examination by you but if the deposition is on Tuesdays or Thursdays, I will only be available from 9:30 am - 12:30 pm, so you will have one hour. If you schedule the deposition on either Monday, Wednesday, or Thursday I will have more availability.

The attorney voluntarily offered a second day deposition to the AG without consulting with the Plaintiff and informed the Plaintiff with this decision during the lunch break of her first day deposition on February 18, 2022, for no valid reason given that FRCP stipulates 7 hours for the deposition. The attorney's decision to bring the Plaintiff for a second day of deposition before she even finishes her first day of deposition caused hardship and mental anguish to the Plaintiff. The counsel of the defendants made threats to file a motion with the court to bring the Plaintiff against her will to the court for a second day for seven hours. The Plaintiff requested that the attorney stands up for her civil rights. The AG office has no right to harass me for no reason and cause mental anguish. On March 10th, 2022, at 8:10 am, the attorney wrote to the plaintiff the following:

*"Mr. O'Connor has stated again that if he feels like he doesn't get enough in this deposition, he will file a motion to compel you to return for an even longer session".*

The Plaintiff never contested the attorney's opinion when he requested to extend discovery for valid reasons. According to Model Rule of Professional Conduct 3.2: Expediting Litigation: *"A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the*

*client"*. The Plaintiff wrote to the attorney asserting this fact in numerous emails. The Plaintiff responded to the last request by the attorney to extend discovery by email on March 2nd, 2022 at 7:09 pm and stated the following:

> The attorney: 4. Are you amiable to extending the current deadlines?
> The Plaintiff: Extending the case deadline is up to you and the AG. While I do not prefer to extend the deadline, if it is done for reasonable reasons and for a short period of time, then I am Ok with it.

VI. <u>You are now asking me to file motions to compel and are raising complaints of harassment against opposing counsel with which I do not agree and will not pursue (ECF86-1).</u>

The motion to compel the discovery materials from the counsel of the defendants has been pending for so long since the Plaintiff was a pro se and the Plaintiff urged the attorney numerous times to request the discovery materials since he took over the case. The Plaintiff informed the attorney numerous times that the internal EEO complaints at MSU contain have crucial evidence on the pervasive sexual harassment, discriminatory and retaliatory acts against women at MSU. The Plaintiff requested the attorney compel these discovery materials in writing on several occasions including on March 10, 2022, at 9:07 a.m. The attorney mischaracterized the Plaintiff's request and described it as harassment towards the AG office while the reality is that the Plaintiff has been having a pending discovery dispute for so long that has never been resolved and the magistrate Judge Charles Day was never updated with the outcomes of this discovery dispute. The attorney never discussed the discovery dispute with the Plaintiff as he now claims it is harassing to the AG, while the motion to compel is a right granted to the Plaintiff and not a form of harassment or a violation of law.

VII. <u>Finally, there is the fundamental matter that you have raised by repeatedly questioning my loyalty and fidelity to your case. Even as late as this morning, having suffered much abuse at your hands, I was emailing the AG letting them know that I would oppose any motion to</u>

9

<u>compel if you so directed. I have brought them to the point of considering a settlement conference based on my strategy and the depositions I conducted of their witnesses. Despite constant and careful representation, you have continued to lash out against me making it impossible for me to continue representing you (ECF86-1).</u>

The Plaintiff repeatedly and unnoticed wakes up on angry messages from the attorney that intensifies her anxiety and makes her wonder what error she have done? She urged the attorney to work for her best interests numerous times and comply with the contract agreement. For example, the attorney made numerous threats in the past to leave the case and falsely accused the Plaintiff that she does not want to settle. The definition of settlement according to the attorney is when the plaintiff leaves her job and becomes unemployed with only one year of salary, while her tenure worth $3 million, net of attorney fees and taxes. This was a major point of conflict with the attorney and it took the Plaintiff too much time and effort to convince the attorney to protect her employment, and this matter has already been resolved. Other than this issue, the Plaintiff cannot do 14 hours deposition due to health concerns as she indicated and work overload. The Plaintiff never lashed out at the attorney, she always requests professional treatment in accordance with laws and regulations. Other than the above issue, there is no fundamental issue between the attorney and plaintiff that would justify withdrawal of the attorney.

The Plaintiff also request that the counsel of the defendants cease and desist from harassing her, convicting her attorney to settle on unfavorable terms to her but only lucrative to the attorney, making any threats of termination, and/or using any illegal manner to influence the outcomes of this litigation. The pressure from the AG office on my attorney is not in compliance with the code of professional conducts, tarnishes the facts and merits of this pending case, waives the rights and privileges of the Plaintiff because she was not born in the USA, and eventually misleads the Honorable Courts. When the attorney states that <u>"I was emailing the AG letting them know that I would oppose any motion to compel if you so directed"</u>, he is violating the contract agreement and

only protects his relationship with the AG, which is puzzling, given he should serve and protect the Plaintiff's interest.

VIII. <u>In your last email to me (Dated 03/10/2022 at 10:01am) you stated that you oppose my withdrawing from the case. This is your right. However, I am confused as to why you would oppose the withdrawal of an attorney whose loyalty and abilities you have challenged repeatedly and publicly for several weeks, including directly in your earlier email (Dated 03/10/2022 at 9:07am), and informing me that you were seeking outside counsels' opinion of my representation (ECF86-1).</u>

The Plaintiff seek outside counsel at some point when the attorney gave her illegal advice and told her that her employment is at risk if she lost the litigation because she is subject to the at-will policy. The Plaintiff is not subject to the at-will policy and she had to spend two days speaking with specialists to figure out where she stands and defend her employment from any further retaliation by her employer. The Plaintiff exercised her rights to understand laws, she never mentioned the name of her attorney to anyone and/or mentioned that he is the one who gave her this advice. She simply wanted the correct legal advice.

For the rebuttal statements mentioned above, the Plaintiff requests that the court order the attorney to continue to represent the Plaintiff until the summary judgment stage is finalized. The Plaintiff litigation as well as litigation are at great risk if the court approved the attorney withdrawal for the below reasons:

1. The attorney informed the Plaintiff during her deposition on February 18, 2022 that Morgan State University will file a motion for summary judgement in two weeks and they will attempt to fire the Plaintiff immediately afterwards. The attorney further asserts that Morgan State University wants to fire the Plaintiff now but they are waiting to win the summary judgement stage. The attorney wrote the Plaintiff the following on February 22nd, 2022, on 11:05 am. "I

11

simply want you to be aware that Maryland is an at-will state so if you lose your case this is a potential risk." The attorney's paralegal Ms. Alexus Viegas confirmed to the Plaintiff via a phone call on February 22, 2022 that she overheard the AG attorney Ms. James O'Connor making these threats and insinuation of termination during one of the conversation between the plaintiff's attorney and the AG office. Mr. O'Connor mentioned that Morgan State University would find a way to terminate the Plaintiff when this lawsuit is over and when they win the summary judgement. The reasons that Morgan State University have for termination are the same reasons this lawsuit is currently pending in court. The Plaintiff was and still facing the worst nightmare of the academic torture by Morgan State University and its legal counsel with no support. Ms. Viegas did not respond to a request by phone from the Plaintiff to put what she heard from Mr. O'Connor in writing because she is currently a partner with the attorney and for fear of losing the attorney-client privilege, this is what she said to the Plaintiff. The departure of the attorney at this stage is not only risking the survival of the summary judgement but also can cause a wrongful termination because the Plaintiff will not have representation or help from any institution or individual who has authority to protect her.

2. The Plaintiff only disagrees with the attorney on two issues. First, extending the deposition for no valid reason for another 7 hours (a second day) due to her extremely busy work schedule, mental anguish she has gone through, and the fact that the extension is due to Ms. O'Connor need to repeat the same question numerous times, hoping he can make the Plaintiff lie under Oath, which is another form of harassment. Second, the settlement manner, the Plaintiff exerted serious efforts to convince the lawyer that a settlement with a very poor payout is detrimental to her career and she received threats before she filed her lawsuit that becoming eventually unemployed is the only outcome of this case.

3. The attorney is terminating his representation pursuant to §6 and §7 of his Agreement (ECF 86-5) as he states in ECF 85. Items 6 specifically is ambiguous because the attorney representation is based on contingency, but the attorney still requests fees even in the case of termination, which will double the litigation cost, cause undue financial hardship and complications, and was a major reason no attorney wanted to accept the case. The client requested clarification before signing the contract agreement and the attorney instructed her that she does not have to worry about anything without any clarification, and further stated that it is a generic statement. The Plaintiff asserts that the causes for termination mentioned by the attorney have no relationship with the truthfulness of the circumstances of this pending lawsuit, her deposition, and sharply deviates from the truth of the matter in the written communications between herself and the attorney, discovery materials, and her deposition. The Plaintiff urges the Honorable Court to reject the attorney's motion and instruct him to comply with the lawyers Model Rules Conduct, as illustrated item 6 (b) of the contract agreement, by protecting the interests of the Plaintiff and not risking her entire lawsuit at a late stage of litigation.

4. The Plaintiff is requesting that the attorney stay in her case because his withdrawal at this stage is prejudicing her case and putting it into danger of losing the summary judgement stage. She consulted with 16 attorneys between March 11th and 17$^{th,}$ and no one accepted the representation at this late stage of litigation, knowing that the attorney has a contingency agreement of 35% of the settlement as well as attorney fees whether he will withdraw or stay, which doubles the fees either ways. It is impossible for any attorney to accept this lawsuit without causing undue financial hardship to the plaintiff, delay justice, and most importantly protect the Plaintiff's civil rights after she was personally attacked by the lawyer for no valid reasons.

5. Most attorneys advised the Plaintiff to explain to the attorney that the information he listed in his termination letter are inaccurate, but the attorney declined to even return numerous calls from

the Plaintiff between March 11th until today and made a unilateral decision to terminate his representation based on false information. Only the court can terminate the attorney and he was professionally responsible of returning the calls of the Plaintiff, but he did not.

6. The attorney restructured and re-planned the entire litigation thus far alone, for example, the attorney: (1) Deposed some administrators that the Plaintiff believes they should not have been deposed such as Tara Berrien and Armada Grant. (2) Refused to depose faculty the Plaintiff believes has material information about the case and should have been deposed such as Delegate Pamela Queen. (3) The Plaintiff did not see the deposition questions before they occur or granted access to the deposition transcripts of all witnesses. (4) Amended the complaint and removed material facts and refused to include them without explanation such as removing the hate and stalking remarks the Plaintiff was subjected to from a certain group of faculty with certain ethnicities when she took her first sick leave. (5) Removed the discrimination based on race and gender, while they are both valid basis for discrimination. The attorney believes that the Plaintiff's skin color as white will hurt her case because she works in all black communities and city and that judges defend black in Baltimore, and hence he alleges there is no need to mention this fact. (6) Refused to include retaliation claims based on the Plaintiff's religion, which was listed in the second EEOC complaint by a federal investigator, not the Plaintiff. All these significant changes and much more made the attorney in control of the current litigation because he formed his own strategy. If the Plaintiff represented herself, she would have to incur undue financial hardship to depose other witnesses and will need to amend her complaint, which will delay justice and cause unreasonable pain and suffering to the Plaintiff. The Plaintiff allowed the attorney to make these significant changes in the case while if she was a pro se, she would have a completely different plan and strategy. It is too late to reverse these restructuring as the Plaintiff already incurred significant deposition costs, even paid for her own deposition fees by the AG

to prove justice in this motion, and amended her complaint.

7. The attorney's departure as the case gets close to the summary judgment is very detrimental to the Plaintiff's case. The Plaintiff only has two hours of deposition scheduled on March 30th, and she is hoping to get the EEO complaints withheld by the AG office before the discovery period ends. After these two steps, the AG will be very quick to file a motion for summary judgment as they informed the attorney with this fact. The attorney's departure is only beneficial to the AG office and violates the code of professional conduct because the Plaintiff's interest should be the center of the attorney's efforts and not the AG.

## CONCLUSION

WHEREFORE, THE plaintiff, Dina El Mahdy, wishes that this Honorable Court: APPROVED the plaintiff's Motion to deny the attorney's decision to terminate his representation.

SIGNED this 17th day of March 2022

Respectfully Submitted
Dina El Mahdy, PhD, CFE
1700 E. Cold Spring Lane
Baltimore, MD 21251

## CERTIFICATE OF SERVICE

I certify that on this 17th day of March, I filed the above document with the Clerk of the Court using the hand-delivery System and will provide a hand copy to the counsel of the defendant on 17th day of March.

Respectfully Submitted
Dina El Mahdy, PhD, CFE
1700 E. Cold Spring Lane
Baltimore, MD 21251