UINN

202.508.3644 | 443.675.1005
contact@thequinnlawgroup.com
www.thequinnlawgroup.com

Dr. Dina El Mahdy
1114 W. Joppa Road
Towson, MD 21204
United States

March 10, 2022

**RE: Notice of Termination of Representation**

Dr. El Mahdy:

Pursuant to Local Rule 101 (2)(a) of the Federal District Court of Maryland, this letter serves as notice that effective March 17, 2022, I will be withdrawing as your counsel and attorney of record in your case against Morgan State University, subject to approval by the Court.

A Motion to Withdraw will be filed on March 17, 2022, for the Courts consideration.

Please note: If the Court agrees to let me withdraw you will have to either:

1. Hire new counsel and have them enter their appearance on your behalf; or
2. Proceed Pro Se (without counsel) which will be entered by the Clerk of the Court.

My withdrawal as your counsel and termination of our Representation Agreement is consistent with §6 and §7 of our Agreement, in keeping with Md. R. Att'y 19-301.16 (a)(1), (b)(4), and (b)(7)

Per section six of your signed representation agreement, "Either Party may terminate this agreement by giving the other Party written notice of termination. Termination may be subject to the Court's approval. Upon receipt or sending of a notice

ECF 86 - 1

1629 K Street N.W. Suite 300
Washington, D.C. 20001

820 Ritchie Highway Suite 270
Severna Park, MD 21146



202.508.3644 | 443.675.1005
contact@thequinnlawgroup.com
www.thequinnlawgroup.com

of termination, Firm shall immediately file a Motion to Withdraw and shall return all case related information to the Client."[1]

My decision to do so is, in part, due to not being provided with accurate and complete information as stated in section seven of our agreement. "Client at all times must provide Firm with accurate and complete information" – something that you failed to do when describing the events surrounding your sick leave.

You told me that Morgan State was harassing you while you were on sick leave, something I included in the Complaint, but admitted during depositions that you were at a conference with students – something you were shown photographic evidence of. Furthermore, you admitted during depositions that you were unsure if you were teaching at Georgetown and American Universities while out on sick leave. You told me that you were too sick to leave the house, much less teach.[2]

In depositions your refused to take my advice or counsel on providing short answers, and continued to defend that position via email even when it became apparent that not following my advice was going to result in additional deposition time being necessary. I tried to avoid having to go before the Court and oppose the guaranteed Motion to Compel because I believe, and advised you, that the AG would succeed in compelling you. In response you accused the judge of being biased[3] and me of not being on your side.

This created a fundamental disagreement between us.[4] You then blamed me for the necessary extension of deposition time. As I repeatedly explained to you, the additional deposition time was necessary to a) allow the Defendant access to evidence in the form of

---

[1] MD Rules Attorneys, Rule 19-301.2
[2] MD Rules Attorneys, Rule 19-303.1
[3] See Email from Dina El Mahdy Dated 02/22/2022 at 1:53 AM.
[4] MD Rules Attorneys, Rule 19-301.2 (Comment 2)

ECF 86-1



202.508.3644 | 443.675.1005
contact@thequinnlawgroup.com
www.thequinnlawgroup.com

testimony, and b) for me to get a full direct examination of you on the record prior to going into summary judgement motions. Your refusal to be available for additional deposition, as requested and advised by me, is you making yourself unavailable for depositions in violation of §7 of our Agreement.

By forcing the Attorney General to limit the remaining deposition time to 2 hours, you also force us to abide by that limitation and provide no time for counter arguments or direct examination. At your demand the notice says 2-hours and there is no legal recourse that would allow me to then extend that time for direct examination (by me) without also allowing Mr. O'Connor more time for his questions. These decisions by you in opposition to my repeated counsel has rendered the representation unreasonably difficult by the you (the client)[5].

You are now asking me to file motions to compel[6] and are raising complaints of harassment against opposing counsel[7] with which I do not agree and will not pursue.[8]

Finally, there is the fundamental matter that you have raised by repeatedly questioning my loyalty and fidelity to your case. Even as late as this morning, having suffered much abuse at your hands, I was emailing the AG letting them know that I would oppose any motion to compel if you so directed. I have brought them to the point of considering a settlement conference based on my strategy and the depositions I conducted of their witnesses. Despite constant and careful representation, you have continued to lash out against me making it impossible for me to continue representing you.

In your last email to me (Dated 03/10/2022 at 10:01am) you stated that you oppose my withdrawing from the case. This is your right. However, I am confused as to why you would oppose the withdrawal of an attorney whose loyalty and abilities you have

---

[5] Md. R. Att'y 19-301.16 (a)(6)
[6] See Email from Dina El Mahdy Dated 03/10/2022 at 9:07am
[7] See Email from Dina El Mahdy Dated 02/20/2022 at 5:10 PM.
[8] MD Rules Attorneys, Rule 19-301.2 (Comment 1)

ECF 86-1

202.508.3644 | 443.675.1005
contact@thequinnlawgroup.com
www.thequinnlawgroup.com

# QUINN

challenged repeatedly and publicly for several weeks, including directly in your earlier email (Dated 03/10/2022 at 9:07am), and informing me that you were seeking outside counsels' opinion of my representation.

Your entire file is available in MyCase which you are familiar with and will remain available for download for at least the next 90 days. Further, we will mail all your case documents in your file, to your address above, via USPS this week.

I am attaching with this letter the most recent Motion to Extend Discovery which was approved by the Judge so that you have before you all the upcoming dates and deadlines in this trial. In addition, you have received and acknowledged the Notice of Deposition for 03/30/2022 at the Attorney General's Baltimore Office.

Good Luck in Your Endeavors.

Sincerely,

*[signature]*

Donald Quinn, ESQ.

**SENT VIA EMAIL AND USPS REGISTERED MAIL POSTAGE PAID**

ECF 86 - 1

1629 K Street N.W. Suite 300
Washington, D.C. 20001

820 Ritchie Highway Suite 270
Severna Park, MD 21146

## Exhibit 86-2

```
                                                  273
1  this the email that you're referring to?
2      A   Yeah.
3      Q   Okay.
4      A   And there was another one on Easter Day,
5  same motion but extremely lengthy.
6          MR. O'CONNOR: Can we go off the record
7  for a second?
8          (Off the record.)
9  BY MR. O'CONNOR:
10     Q   Okay. You've just been presented with
11 an email that's dated 4/12/2020 from Sharon
12 Finney. In your amended complaint and answers to
13 interrogatories you claim that on April 12th, 2020
14 Dr. Finney sent you an email in which she accused
15 you of lying and being non-collegial in regard to
16 the complaints you'd made.
17     A   True, in addition to being uncivil.
18     Q   Okay. And uncivil. Is this the email
19 that you're referring to?
20     A   Yes.
21     Q   Okay.
22         MR. O'CONNOR: So we can admit this as
```

```
                                                  274
1  Exhibit 37.
2          (Exhibit 37 was marked for
3  identification and was retained by counsel.)
4      Q   So Dr. El Mahdy, do you recognize this
5  picture?
6      A   It's very dark. I can't see actually
7  what's going on here.
8      Q   It is dark. I apologize. Are you in
9  this picture?
10     A   I don't know. It's very, very dark. I
11 have better quality than that. I know I was in
12 the PCOB. It looks like someone like me but I
13 can't actually clear that out. I think I'm using
14 one on my social media with that quality and I'm
15 standing in the center, not on the side.
16     Q   I'm sorry. I couldn't understand what
17 you said.
18     A   I have other – like I took many
19 pictures when were in the PSOC. The only one that
20 I'm using on my social media and everywhere is the
21 one where I'm standing in the middle. And again,
22 I just can't confirm. It's very bad quality
```

```
                                                  275
1  print.
2      Q   Okay. You do recall –
3      A   But I was in the PCOB.
4      Q   Okay. When was that?
5      A   October, late October.
6      Q   Of what year?
7      A   2018.
8      Q   Okay. And this was a field trip with
9  the university?
10     A   Correct. No, it's not university. I
11 organized it personally.
12     Q   Okay. Who accompanied you on the field
13 trip?
14     A   Dr. Makkawi and students from all over
15 the school. Accounting majors primarily.
16     Q   Accounting majors from Morgan State
17 University?
18     A   Yes.
19     Q   Okay.
20     A   But I'm the organizer.
21     Q   Did you take sick leave from the
22 university in 2018?
```

```
                                                  276
1      A   Yes.
2      Q   Okay. Were you on sick leave when this
3  picture was taken?
4      A   No. They didn't allow me to take sick
5  leave. I did not take sick leave. I had to come
6  to campus right away because I was harassed and
7  told they would stalk me off campus. So I
8  couldn't take sick leave. The moment I got the
9  reprimand letter I was crying. I was devastated.
10 I didn't want to come to campus. I was forced to
11 come to campus. So I actually worked during my
12 sick leave. I didn't actually take any sick
13 leave.
14     Q   Okay. So you're saying that other
15 faculty didn't cover your classes the week of –
16     A   I didn't come to campus during that week
17 but I worked. I fulfilled my duties towards my
18 students. That was huge. So I still worked for
19 Morgan during that week.
20     Q   Okay. Did you teach classes that week?
21     A   At Morgan? No, I did not.
22     Q   Okay. Did you teach classes somewhere
```

ECF 86-2

**Exhibit 86-3**

El Mahdy (Bates No. 0002407) that was shared by the Plaintiff with the AG on 06/30/2021 and later with the attorney on late August 2021

The day of this event was on 10/25/2018, three days after Dr. El Mahdy received the vicious reprimed letter from her chairperson as a form of retaliation



ECF 86-3

# El Mahdy -v- Morgan State University: Dina El Mahdy - 2/18/2022

Inbox

**transcripts@planetdepos.com** 11:31 AM (3 hours ago)

to me

Dina,

Thank you for your patience as I calculated the price and looked into the duration of the deposition. Please see below for the duration.

**Start of depo: 9:34:10 AM**
Break: 10:26:02 AM - 10:26:27 AM
Break: 10:29:30 AM - 10:30:14 AM
Break: 11:08:36 AM - 11:32:46 AM
Break: 12:25:40 PM - 12:27:03 PM
Break: 1:14:11 PM - 1:50:47 PM
Break: 2:36:53 PM - 2:41:53 PM
Break: 3:30:47 PM - 3:31:13 PM
**End of depo: 3:47:27 PM**

The price of the electronic deposition transcript is $1,182.50. An additional fee is added for printing and shipping if you request a hard copy of the transcript.

Should you wish to purchase the transcript, please visit https://planetdepos.com/pay **(3% convenience fee applies)** to make your payment. Upon receipt, we will email you the transcript files.

After entering the site, navigate to the "Pay Now" tab located at the upper right-hand corner. Enter the Job Number **435171** within the "Invoice No." field.

**Upon receipt of payment, we will promptly proceed accordingly.**

*Referenced Job Number: 435171*

Be well,

Katie Fortner | Planet Depos
Client Services Specialist
Worldwide Court Reporting & Litigation Technology
t 888.433.3767 | f 888.503.3767
transcripts@planetdepos.com| planetdepos.com

Did we Make It Happen for you today? Please tell us about your experience.


ECF 86-1

## REPRESENTATION AGREEMENT

The undersigned <u>Dina El Mahdy</u> (the "Client") has retained Quinn, LLC (the "Firm") to represent Client in connection with Client's discrimination complaint against Morgan State University ("MSU"). The Firm agrees to provide legal services in connection with this matter based on the following fee schedule.

1. Fees:
    a. Contingency Fee Arrangement: Client acknowledges that she has been advised by the Firm that any contingency fee is <u>negotiable</u> and not set by law. Bearing such advise in mind, Client agrees to pay to the firm a fee of thirty-five percent (35%) of any recovery from the case (the "Fee").
        i. Recovery is defined as any amount to be paid by MSU and/or the State of Maryland or any other party on behalf of MSU to Client based on a settlement, negotiated settlement, mediated settlement, arbitration award, or litigated settlement (the "Recovery").
        ii. The Fee shall be calculated based on the gross amount to be received by the Client after deducting all reasonable expenses incurred, by the Firm, in prosecuting the matter.
        iii. Upon receipt, Recovery funds shall be deposited in the Firm's trust account with M&T Bank. Firm shall provide an accounting for expenses and shall transfer sixty-five percent (65%) of the balance to the Client within thirty (30) days of the funds clearing the account. The Firm shall transfer the Fee to its operating account within thirty (30) days of the funds clearing the account.
    b. Flat Fee: Client shall pay a flat fee of seven-hundred-fifty dollars ($750.00) upon signing of this agreement as an engagement fee (the "Flat Fee"). Upon Firms receipt of all or any portion of the Flat Fee, the funds are the property of the Firm. It will be deposited in Attorney's business account, rather than the Firm's trust account, and Client hereby specifically agrees that Attorney may do so. <u>This Flat Fee shall be fully earned and non-refundable upon the Firm filing a notice of appearance in the Client's case</u> (Case No. 20-cv2715SAG in the United States District Court for the District of Maryland).

2. Costs: Client shall pay all out-of-pocket costs, including court costs, process service, filing fees, depositions, long distance telephone calls, excessive postage, witness fees, mileage (at the rate authorized by law for business miles), and other necessary court and office costs. Client agrees to pay <u>two-hundred-fifty dollars ($250.00)</u> as an initial advance for costs. Attorney will deposit the cost advance in Attorney's trust account and disburse as needed to pay costs incurred on behalf of client. Firm is not obligated to advance any



7. Cooperation: Client, at all times, will cooperate with Firm so that Firm may provide legal services as efficiently and quickly as possible. Client at all times must provide Firm with accurate and complete information; promptly respond to Firm's inquiries; keep Firm informed of changes in Client's address, telephone number, and personal and financial affairs; and Client and Client's witnesses shall be available for telephone and office conferences with Firm, and further available for depositions and court hearings. Should Client not wish to follow Firm's advice, Firm has the right in its sole discretion to withdraw as Client's attorney. _____
ID gHZY5bf59YPZRXcsJLs22RDr

8. Arbitration: Client and Firm agree that any dispute, controversy, or claim arising out of, or relating to, this Agreement or the breach thereof shall be resolved by binding, final arbitration between the parties. Client and Firm agree that any dispute, controversy, or claim arising out of, or relating to, this Agreement or the breach thereof shall be resolved by binding, final arbitration between the parties. The arbitration shall be administered by The MSBA's Committee on the Resolution of Fee Disputes (the "Committee") of Maryland in accordance with its Regulations Governing the Resolution of Fee Disputes and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. There shall be one arbitrator appointed by ACAB. The seat or place of arbitration shall be Annapolis, MD. _____
ID gHZY5bf59YPZRXcsJLs22RDr

Client agrees that she has been advised as follows:

   a. By agreeing to binding arbitration, you waive and thereby eliminate your right to submit the dispute for determination by a court, thus waiving your right to a jury trial. The grounds for appeal of an arbitration award are very limited as compared to a court judgment or jury verdict. Therefore, you should consult with independent counsel and carefully consider whether arbitration is acceptable to you. _____
   ID gHZY5bf59YPZRXcsJLs22RDr

9. Choice of Law and Forum: This Agreement and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the State of Maryland, United States of America without giving effect to the conflict of law's provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Maryland. _____
ID gHZY5bf59YPZRXcsJLs22RDr

10. Sole Agreement: This Agreement constitutes the sole and entire agreement between us with respect to the subject matter of this Agreement, and supersedes all prior and

ECF-86-5

out-of-pocket costs. If so advanced, Client agrees to pay all additional costs, advances, out of pocket costs, or disbursements incurred or advanced on Client's behalf.

3. Limitations: This agreement does not cover or apply to the filing of, prosecution of, or defense of an appeal, enforcement action, or litigation beyond the above referenced matter, in which case a new representation and fee agreement must be executed.

4. Failure to pay: In the event Client fails to pay Attorney's fees and/or costs and disbursements pursuant to this agreement, Firm may withdraw as counsel upon written, timely notice to Client, subject to the court's authorization to withdraw. Further, the Firm may at its sole discretion engage in a collection action to collect the balance of fees dues. The Client agrees to pay any attorney's fees, court costs, or collection fees associated with his failure to pay the Firm, in addition to any balances due.

5. Conclusion: At the conclusion of the representation, Firm will provide Client with a written accounting of all fees in the matter. In the event our relationship is terminated before the agreed-upon legal services have been completed, you may or may not have a right to a refund of a portion of the Fee. If Firm's representation terminates prior to the performance of the agreed-upon service, Firm will provide client with a written accounting of the fees earned and costs incurred.

6. Termination: Either Party may terminate this agreement by giving the other Party written notice of the termination. Terminations may be subject to the Court's approval. Upon receipt or sending of a notice of termination, Firm shall immediately file a Motion to Withdraw and shall return all case related information to the Client. If either party terminates this Agreement the following remain in effect regarding Recovery and Fees:

    a. If Client terminates this Agreement with the Firm prior to a Recovery, Client hereby agrees that Firm is entitled to and hereby agrees to pay Firm the full Fee all other Agreements and Contracts notwithstanding.
    b. If Firm terminates this Agreement with the Client prior to a Recovery, Client hereby agrees that the Firm is entitled to and hereby agrees to pay the Firm one-half (1/2) of the Fee, all other Agreements and Contracts notwithstanding, provided that Firm has represented the Client in a manner consistent with this Agreement and the Lawyers Model Rules of Conduct.

ECF 86-5

## eSignature Details

**Signer ID:** **gHZY5bf59YPZRXcsJLs22RDr**
Signed by: Dina El Mahdy
Sent to email: dina.elmahdy@gmail.com
IP Address: 96.234.164.92
Signed at: Aug 16 2021, 6:25 pm EDT

**Signer ID:** **sgweYe45jtsL7n5L4csfStob**
Signed by: Don Quinn
Sent to email: donquinn@thequinnlawgroup.com
IP Address: 100.16.51.18
Signed at: Aug 16 2021, 6:34 pm EDT

ECF - 86 - 5