IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| DINA EL MAHDY, | * |
| Plaintiff, | * |
| v. | *     Civil Case No. SAG-20-2715 |
| MORGAN STATE UNIVERSITY, | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

This case involves national origin discrimination and retaliation claims brought by self-represented Plaintiff Dina El Mahdy ("Plaintiff") against her employer, Morgan State University ("Morgan State"). Discovery has now concluded, and the parties have filed cross-motions for summary judgment. ECF 127, 136. This Court has reviewed the motions, along with the associated briefing and exhibits. ECF 148, 151. For the reasons set forth herein, Morgan State's motion will be GRANTED, and Plaintiff's motion will be DENIED.

## I.     PROCEDURAL BACKGROUND

Because there appears to be some disagreement about which claims are presently pending before this Court, a review of the procedural history of the case is warranted. Plaintiff, as a self-represented litigant, originally filed a complaint in September, 2020 against her supervisor, Dr. Sharon Gary Finney, and Morgan State. ECF 1. This Court granted a motion to dismiss Plaintiff's color-based discrimination claims and all claims against Dr. Finney, leaving the remaining claims against Morgan State only. ECF 13. Extensive discovery disputes ensued. In August, 2021, an attorney, Donald G. Quinn, entered his appearance on behalf of Plaintiff. ECF 63. Mr. Quinn filed an Amended Complaint, ECF 71, which includes just two claims against

Morgan State: National origin discrimination and retaliation. Several months later, in March, 2022, Mr. Quinn sought to withdraw as counsel, and this Court granted his motion. ECF 91. Plaintiff, again in a self-represented status, sought to file a Second Amended Complaint to add and restore various claims. ECF 93. However, about one month later, on April 28, 2022, two new lawyers entered their appearances for Plaintiff: Robin R. Cockey and Ashley Ann Bosche. ECF 97; ECF 98. Mr. Cockey withdrew Plaintiff's *pro se* motion seeking leave to file the Second Amended Complaint. ECF 99. Following unsuccessful settlement efforts, Mr. Cockey and Ms. Bosche withdrew their appearances, leaving Plaintiff again in a self-represented posture with the First Amended Complaint as the operative complaint. ECF 117.

## II.    RELEVANT FACTS[1]

Plaintiff, an Egyptian-born American citizen, began working in 2011 at Morgan State's Business School as a visiting professor in the Department of Accounting and Finance. ECF 127-2 (El Mahdy Dep.) at 14:2–4, 26:1–5. She was promoted to Assistant Professor in 2013, eventually receiving tenure and being promoted to Associate Professor in 2016. ECF 127-3 ¶ 2. Professors at Morgan State engage in teaching, research, and service to the University. ECF 127-2 at 37:3–6. Plaintiff's responsibilities have not changed during her employment. *Id.* at 37:7–10. She has never been demoted, suspended, or had her pay decreased. *Id.* at 36:18–21. In fact, she is presently the highest paid Associate Professor, and among the highest-paid professors of any rank, in the Accounting Department.[2] ECF 127-5.

---

[1] Because Plaintiff asserts myriad events of discrimination, some of them are summarized in this factual summary and others are discussed in the analysis section below.

[2] Morgan State asserts that Plaintiff is the second-highest paid professor, but submitted an exhibit that does not reference Dr. Phyllis Keys. ECF 127-5 at 5. Plaintiff asserts that Dr. Keys earns more than she does. The precise ranking is immaterial.

Dr. Finney, Plaintiff's direct supervisor, has chaired the Accounting Department throughout Plaintiff's employment. In that capacity, Dr. Finney supported Plaintiff's initial hire and her various promotions through the ranks. ECF 127-2 at 33:15–34:9; ECF 127-3 ¶ 3.

Every five years, Morgan State's Business School has an accreditation review by the Association to Advance Collegiate Schools of Business ("AACSB"). ECF 127-4 ¶ 9. Maintaining the accreditation is important to Morgan State, as less than 5% of business schools obtain the accreditation. *Id.* Two professors, Dr. Alex Tang and Dr. Huey-Lin Sun, who have played significant roles in the accreditation process, have received exceptional service awards from the Dean. *Id.* ¶¶ 9–11. The Dean attests that Plaintiff "has never performed these functions for the school or provided such extensive service to the school in a leadership role." *Id.* ¶¶ 10, 11.

In February, 2016, a colleague, Dr. Phyllis Keys, declined to give Plaintiff remote access to a Bloomberg database available to all professors at terminals on campus.[3] ECF 127-2 at 87:11–94:2. Another professor with access to the licenses, Dr. Alex Tang, gave Plaintiff a license one week later to afford her the remote access that she requested. *Id.* at 88:6–9. Ultimately, Plaintiff concluded that the Bloomberg database was not helpful in her research. *Id.* at 106:10–107:18,

By 2018, Plaintiff was serving on several committees relating to the assessment for the accreditation. Plaintiff does not recall how she initially became involved with the assessment committee, whether Dr. Finney asked her to do it or assigned it to her officially. *Id.* at 177:4–178:4. In August, 2018, Plaintiff complained to Dean Fikremariam Boghossian ("the Dean") about an incident when a fellow professor invited her to an off-campus conference about "[their] paper,"

---

[3] Plaintiff alleges that Dr. Keys attributed her denial of Plaintiff's Bloomberg license to Dr. Finney and Dr. Keys stated that Dr. Finney had made comments about Plaintiff being a foreigner. ECF 136-2 at 6–7. Any such statements are hearsay and are not admissible. Plaintiff concedes that she "didn't talk to Dr. Finney directly" about the Bloomberg topic. ECF 127-2 at 97:2–3.

which she interpreted to be a sexual advance because she had not participated in any research with him. *Id.* at 119:7–17, 133:2–136:6. The same professor, Dr. Solomon Alao, had previously hugged her in the workplace and asked her out for lunch or dinner. *Id.* at 137:15–138:8. Plaintiff no longer felt comfortable working on the assessment with Dr. Alao, and the Dean recommended that she resign from the committee. *Id.* at 123:12–14, 135:22–136:6. On August 13, 2018, Dr. Finney asked Plaintiff to stay on until she had summarized the data that she had collected to date in the assessment cycle, but two days later, Plaintiff resigned. ECF 127-10; ECF 127-11. On August 16, 2018, Dr. Finney emailed the department asking for volunteers to take over Plaintiff's duties. ECF 127-13. In October, 2018, Plaintiff sent the raw, unsummarized data to Dr. Finney. ECF 127-2 at 190:16–191:1, 191:6–10. On October 20, 2018, Dr. Finney sent Plaintiff a "letter of reprimand" for her refusal to summarize the assessment data. ECF 127-27 at 6. The letter referred to Plaintiff's accusations that Dr. Finney had abused and harassed her. *Id.* While the letter of reprimand stated that it would be placed in Plaintiff's official personnel file, it was not. *Id.;* ECF 127-28 ¶ 3. After receiving the letter of reprimand, Plaintiff filed a formal complaint against Dr. Finney with the Equal Employment Opportunity (EEO) office. ECF 127-29.

Morgan State's policy, since 1996, has allowed full-time faculty members to teach a maximum of one class per semester outside of the institution, provided that the faculty member obtains "the written permission of the President (or designee)." ECF 127-9 . In September, 2018, Dr. Keys reported to the Provost that Plaintiff was teaching unauthorized classes at Georgetown University and American University. ECF 127-8 ¶ 7. On September 17, 2018, the Provost emailed the Dean about Plaintiff's teaching three outside courses during the semester at those two institutions. ECF 127-17. When the Dean approached Plaintiff, Plaintiff stated that Dr. Finney had given her verbal permission to teach the three courses and had advised that she needed no further

approval from the Dean. ECF 127-2 at 206:2–19. Dr. Finney denies that conversation, saying that she remembers a discussion about outside teaching but "did not understand that [Plaintiff] would be teaching three courses off campus in a single semester." ECF 127-18. Nobody else was present for the conversation between Plaintiff and Dr. Finney, and there were no follow up emails. ECF 127-2 at 208:4–7, 210:10–15. Subsequently, Dr. Finney sent Plaintiff a cease-and-desist letter, advising her that any future outside teaching would require written approval the prior semester. ECF 127-22 at 2.

The record in this case is rife with evidence that Plaintiff's difficult interpersonal interactions are not limited to Dr. Finney. Instead, her allegations of "abuse" or "harassment" are wide-ranging, and include complaints made against Dr. Yu Cong, ECF 127-39, ECF 127-42, Dr. Heuy Lian Sun, ECF 127-40, Dr. Bilal Makkawi, ECF 127-41, Armada Grant from Human Resources, ECF 127-31, and an unnamed student, ECF 127-43, ECF 127-45.[4]

As of February 18, 2022, Plaintiff had not applied for promotion to full professor. ECF 127-2 at 36:2–11. It appears she applied after that date and her application remains under consideration. ECF 136-51; 148-4 ¶ 2.

## III.   STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to

---

[4] At her deposition, Plaintiff also accused opposing counsel of abuse and harassment. ECF 127-16 at 314:9–10.

support the non-moving party's case, the burden then shifts to the non-moving party to proffer

specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide

enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting

*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a

"scintilla of evidence" in support of the non-moving party's position will be insufficient; there

must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (quoting *Anderson*

*v. Liberty Lobby, inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot

rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v.*

*Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to

provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving

party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting

*Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine

issue as to any material fact," because the failure to prove an essential element of the case

"necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Coleman v. United States*, 369

F. App'x 459, 461 (4th Cir. 2010)). In ruling on a motion for summary judgment, a court must

view all of the facts, including reasonable inferences to be drawn from them, "in the light most

favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

In reviewing the summary judgment motions, the Court also considers Plaintiff's

self-represented status:

> In *Bullock v. Sweeney*, 644 F. Supp. 507, 508 (N.D. Cal. 1986), the court found that
> a pro se plaintiff's pleadings and motions must be liberally construed. *See Haines*
> *v. Kerner*, 404 U.S. 519, 520 (1972) (writings by pro se complainants held to "less
> stringent standards than formal pleadings drafted by lawyers"); *Jones v. Johnson*,

781 F.2d 769, 771 (9th Cir. 1986); *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

*See Wall v. AT & T Technologies, Inc.*, 754 F. Supp. 1084, 1089 (M.D.N.C. 1990). Although the Court applies that more liberal standard in reviewing a pro se response to a defendant's summary judgment motion, the pro se plaintiff "may not rest on [her] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue" to be tried before a jury. *Harleysville Mut. Ins. Co. v. Packer*, 60 F.3d 1116, 1120 (4th Cir. 1995) (citations omitted).

## IV.   DISCUSSION

### A.   WHAT CLAIMS ARE PENDING

As noted above, Plaintiff's Amended Complaint contains two claims: National origin discrimination and retaliation. ECF 71. While there were other claims of race-based and gender-based discrimination (and a claim for hostile work environment) in Plaintiff's original complaint and in her Equal Employment Opportunity Commission (EEOC) charge, Plaintiff eliminated those claims when her Amended Complaint was filed. "The general rule . . . .is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect." *Young v. City of Mount Ranier,* 238 F.3d 567, 573 (4th Cir. 2001). The Fourth Circuit has clearly explained that "if an amended complaint omits claims raised in the original complaint, the plaintiff has waived those omitted claims." *Id.* Thus, the only pending claims for this Court's consideration are national origin discrimination and retaliation against Morgan State. Other claims, including those pertaining to race or sex discrimination, cannot be considered in this action.

In addition, Plaintiff raises allegations in her briefing and declarations that were not included in either her EEOC charge or her First Amended Complaint. Specifically, she now alleges that Morgan State officials changed dozens of her student grades, that she was the only faculty member to teach five courses in the spring semester of 2021, that Morgan State failed to process

her request for ADA accommodation,[5] that she was denied certain travel funds and opportunities, that she was subjected to sexual advances by the Dean and by Dr. Augustus Abbey, that she was denied opportunities to teach classes in the Ph.D. program from 2011 to 2020, and that Dr. Finney campaigned against her in her recent efforts to be promoted to Full Professor. Those claims were not administratively exhausted, and most of them were not explored in discovery. *See* ECF 127-35 (EEOC complaint); *Walton v. Harker,* 33 F.4th 165, 174–75 (4th Cir. 2022) (finding that a retaliation claim that was not included in the original EEOC charge had not been administratively exhausted). Moreover, plaintiffs cannot amend their complaints through briefing. *See Southern Walk at Broadlands Homeowner's Ass'n Inc. v. OpenBand at Broadlands, LLC,* 713 F.3d 175, 184 (4th Cir. 2013). And they cannot raise new issues at the summary judgment stage. *See Walton*, 33 F.4th at 175 ("Plaintiffs cannot proffer untimely issues absent from their initial pleadings to avoid summary judgment . . . ."). This Court therefore will not consider Plaintiff's new allegations while evaluating her claims in the Amended Complaint.

## B.  WHAT EVIDENCE CAN BE CONSIDERED AT SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure outlines the evidence that this Court can consider when adjudicating a summary judgment motion. This Court must consider, in part, whether a fact that a party relies on "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). A prime example of inadmissible evidence is hearsay. Many of Plaintiff's exhibits consist of documents she drafted explaining what people said to her, or emails she received from other people. Those statements are largely hearsay. Plaintiff has not offered sworn declarations from witnesses or deposition testimony under oath, which would be in

---

[5] While this Court need not reach the issue, there is uncontroverted evidence that Morgan State granted Plaintiff an ADA accommodation allowing her to telework for the remainder of the school year. ECF 148-3 ¶ 5.

admissible form. She has submitted her own declarations and affidavits. *See, e.g.,* ECF 136-2; 136-9; 136-14; 136-34; 136-50. While a non-movant's self-serving affidavit, without more, can sometimes create a question of fact and overcome summary judgment, other times it is insufficient. *See Lovett v. Cracker Barrel Old Country Store, Inc.*, 700 F. App'x 209, 212 (4th Cir. 2017); *compare Coffey v. Chem. Specialties, Inc.*, No. 92-CV-2397, 1993 WL 318886 at *3 (4th Cir. Aug. 20, 1993) (finding plaintiff's "self[-]serving testimony" to be "utterly lacking in foundation" and thus failing to establish a genuine issue of material fact), *with Harris v. Mayor & City Council of Balt.*, 429 F. App'x 195, 198 n.5, 202–03 (4th Cir. 2011) (concluding that summary judgment was inappropriate, in part because of evidence from non-movant's affidavit). Where, as here, the self-serving affidavits and declarations largely recite hearsay, they do not evidence any genuine issue of material fact as required to survive summary judgment. For example, when Plaintiff attests, "Dr. Keys told me that Dr. Finney denied me access to the data and called me a 'foreigner,'" ECF 136-2 at 7, the statement contains two levels of hearsay: Dr. Keys's out-of-court statement to Plaintiff about Dr. Finney's out-of-court statement to her. Plaintiff's affidavit is full of such instances, describing what other people told her or what Dr. Finney said to other people. This Court cannot properly consider that type of evidence at the summary judgment stage because it is not presently in, and cannot be placed in, admissible form. In this Court's analysis below, then, it will consider only non-hearsay evidence when evaluating Plaintiff's various claims.

## C.  ANALYSIS OF THE CLAIMS

### 1.  National Origin Discrimination

Plaintiff's first claim is national origin-based discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). To maintain her claim, Plaintiff must adduce evidence to create a genuine issue of material fact whether she (1) is a member of a protected class, (2) was meeting her employer's legitimate job expectations, (3) suffered an adverse employment action and (4) can show that similarly situated employees outside of the protected class (in this case, non-Egyptian) were treated differently. *White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004). Morgan State, as the moving party, has adduced evidence demonstrating that Plaintiff cannot satisfy the third element because she suffered no adverse employment action. An adverse employment action is one that produces "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Additionally, Morgan State notes that Plaintiff has failed to satisfy the fourth element because she does not identify similarly situated employees who received disparate treatment.

Plaintiff alleges at least nine incidents of discrimination, which are addressed sequentially below. For each incident, Plaintiff does not satisfy either the third or fourth element, or both.

### a. *Refusal to Allow Plaintiff Remote Access to the Accounting Database*

First, Plaintiff avers that in 2016, she was deprived of a "Bloomberg Anywhere" license which would allow her to access the Bloomberg accounting database from home and not from a computer on campus. She acknowledges that on-campus access to the database remained available to her. ECF 127-2 at 90:1–94:2. After one week, a colleague, Dr. Tang, gave Plaintiff access to his

"Bloomberg Anywhere" license. Plaintiff ultimately found the database to be unhelpful for her research paper. *Id.* at 106:6–107:18, 109:1–4, 112:22–115:17.

This particular discrimination claim is barred by limitations because the one-time event occurred in 2016. Plaintiff did not file an EEOC charge until 2018, which was not within 300 days of the incident. ECF 127–35. Also, even had the charge been timely filed, a single week of having to access the Bloomberg database only from a computer on campus does not constitute significant harm or even a meaningful change in employment status, particularly given Plaintiff's ultimate conclusion that the database was unhelpful in her work. She therefore has no viable claim of national origin discrimination relating to her denial of access to the database.

### b. Handling of Plaintiff's Report of Sexual Harassment

Second, Plaintiff alleges that Morgan State discriminated against her by failing to conduct an adequate investigation of her sexual harassment allegations against Dr. Alao. But given the nature of Plaintiff's sexual harassment allegations, the failure to investigate did not amount to a significant change in her employment status. Specifically, Plaintiff had no further contact with Dr. Alao after the exchange of emails that made her uncomfortable. ECF 127-2 at 120:18–121:14. This is not a circumstance where Plaintiff was forced to continue working in close proximity to an alleged harasser because of her employer's failure to take appropriate action.

Moreover, Plaintiff offers no evidence that any similar allegations asserted by non-Egyptian employees were met with a different response. Plaintiff told the Dean and the EEO that she did not want to pursue a claim against Dr. Alao, and she has had no contact with him since June 2018. *Id.* at 62:17–63:17, 120:18–121:14; ECF 127-26 at 4 ("You stated you did not want to file a formal complaint regarding that matter."). Plaintiff has cited no instances where an employee of another national origin similarly requested not to pursue a claim, but the Dean or Morgan State

undertook an investigation. She therefore has no viable claim of national origin discrimination relating to any failure to investigate.

### c.  Continuing Request for Assistance with the Assessment Data

Third, Plaintiff alleges that she was forced to continue working on the assessment committee following her allegations of sexual harassment despite her request to resign from the committee to avoid further contact with Dr. Alao. She believes that she experienced discrimination when her attempt to resign from the assessment committee was met with resistance, whereas Dr. Keys was permitted to resign at will from the same committee. She also alleges that Dr. Finney called her a "foreigner" during the discussion. ECF 127-16 at 337:14–20.

Certainly, the record reflects that Dr. Finney asked Plaintiff to continue to do some transitional work, namely summarizing certain data, before abdicating her leadership role. Even assuming, without deciding, that asking Plaintiff to prepare a summary could constitute an adverse employment action, Plaintiff has not identified a similarly situated non-Egyptian comparator. Plaintiff argues that Dr. Keys was allowed to resign from the assessment committee without further work, but Dr. Keys did not resign in the middle of an accreditation cycle like Plaintiff. ECF 127-8 ¶¶ 3–5. Additionally, the record clearly shows that Plaintiff was not prevented from resigning but was asked only to summarize the assessment data that she had been gathering for two years before resigning. In the end, Plaintiff resigned anyway, without summarizing the data. She sent the data to Dr. Finney in its unsummarized form. ECF 127-2 at 190:16–20. Being asked to perform a work task that she refused to perform is not an adverse employment action.

### d.  Assignments to Boards and Service

Fourth, Plaintiff alleges that she was assigned more service work than other faculty. While Morgan State officials do assign some faculty to boards, committees, and other service, such

service is voluntary, although it is one factor considered when evaluating candidates for tenure and promotion. Moreover, other than her conclusory assertions, Plaintiff has adduced no specific evidence showing she performed more committee or service work than her non-Egyptian colleagues. She attaches one chart listing committee memberships, but the chart does not reflect the time associated with any particular committee's work. ECF 136-6 at 8.

In the fall of 2018, Plaintiff in fact resigned from several service positions she had undertaken, including reporter for the department committee, co-chair of the school committee, and representative on the university committee. ECF 127-10; ECF 127-11. She suffered no adverse consequence for those resignations in terms of her employment or salary. Moreover, she concedes that she cannot remember how she came to have those assignments in the first instance (in other words, whether she was assigned the positions involuntarily or agreed to do them). ECF 127-2 at 177:4–178:4. She has therefore adduced no evidence that she was forced to do more service work than others because of her national origin.

### e. *Cease and Desist Letter for Outside Teaching*

Fifth, Plaintiff avers that she was disciplined for and prohibited from teaching classes outside Morgan State while her colleagues were not. The university's policy allows a faculty member to teach one class per semester at an outside institution, with appropriate permission from the President or designee. ECF 127-9. Even taking as true Plaintiff's contention that Dr. Finney told her that her proposed schedule was permissible and that she should not tell the Dean, following that advice placed Plaintiff in clear violation of the written policy. *See* ECF 127-7 at 81:4–82:1 (the Dean's testimony that only the Provost or President could approve outside teaching). While Plaintiff received a letter telling her she would have to follow the policy in the future, it is uncontroverted that she was permitted to continue teaching her three outside courses at

13

Georgetown University and American University in the fall semester of 2018. ECF 127-23. She received no discipline for her violation, other than the letter.[6]

With respect to permitted outside teaching, Plaintiff offers evidence that a colleague, Dr. Bilal Makkawi, engaged in extensive outside teaching without receiving a similar "cease and desist" letter. Plaintiff has not adduced evidence to show, however, that either of the two decisionmakers involved in sending her the letter, the Provost or Dr. Finney, knew the extent of Dr. Makkawi's outside employment. Such knowledge is essential to establish that the decisionmaker treated similarly situated employees differently on the basis of a protected class. *See Duggan v. Sisters of Charity Providence Hosps.*, 663 F. Supp. 2d 456, 463 (D.S.C. 2009) (stating that a plaintiff alleging disparate discipline must show that the decisionmaker knew about misconduct by others outside the protected class). Plaintiff also argues that another colleague, Dr. Pamela Queen, engaged in extensive outside employment without similar reprimand. The record does not reflect that Dr. Queen ever engaged in outside teaching, but instead, she served as a delegate in the Maryland House of Delegates. She was therefore not similarly situated to Plaintiff, who was indisputably subject to the policy on outside teaching. Plaintiff has therefore not adduced evidence of national origin discrimination in Morgan State's handling of her outside teaching.

### f. Denied a Sabbatical

Sixth, Plaintiff alleges that she was denied sabbatical while her colleagues were not. But Morgan State has submitted uncontroverted evidence that the Dean issued a memo in July 2018 establishing a policy that he would not support any faculty requests for sabbatical for the next two

---

[6] To the extent Plaintiff asserts (without evidence) that Morgan State and Dr. Finney influenced Georgetown's or American's decision not to offer her further employment, that conduct would not amount to an adverse employment action. An employer is not required to assist its employees in procuring employment elsewhere.

years because of the workload attendant to the upcoming accreditation review. ECF 127-20. Sabbatical is permitted at the discretion of Morgan State and is not a guaranteed employment benefit. The Dean forwards his recommendation on a request for sabbatical to the Provost, who forwards a recommendation to the President, who makes the final decision to award or deny leave. ECF 127-7 at 86:21–87:10.

Consistent with his previously announced "no sabbatical" policy, the Dean did not support Plaintiff's taking a sabbatical when she requested one in September 2018. Plaintiff offers no example of any non-Egyptian professor who was granted a sabbatical during the "no sabbatical" period. The only two professors she cites, Dr. Sheela Thiruvadi and Dr. Kang Cheng, made their requests for sabbatical before the policy went into effect. *See, e.g.*, ECF 127-7 at 94:13–18, 99:19–100:13; ECF 148-7. Plaintiff therefore has no evidence of any similarly situated person being treated differently and no evidence that the legitimate non-discriminatory reason for denying her sabbatical was pretextual.

### g.   *Canceling her Summer Classes in May 2020 and Reopening One*

Seventh, Plaintiff asserts that Dr. Finney deliberately cancelled her summer classes and later reopened one of them, resulting in low enrollment. She alleges that Morgan State failed to protect her from this discriminatory action. But Dr. Finney had no involvement in the decision to cancel or reopen Plaintiff's classes. ECF 127-34 ¶ 7; ECF 148-5 ¶ 4. Instead, Morgan State has established that its Academic Affairs Office canceled sixty-two summer courses in May, 2020, to eliminate redundant offerings, which is a non-discriminatory reason. ECF 127-7 at 150:4–152:1; ECF 127-33. Plaintiff acknowledges that other professors like Dr. Thiruvadi were negatively impacted by the cancellations, but Plaintiff claims that she was the "only faculty…in her title and rank who suffer[red] financial loss" because Dr. Finney gave Dr. Thiruvadi an existing, fully enrolled class.

ECF 136-1 at 21. While Plaintiff is correct that Dr. Finney re-assigned a class to Dr. Thiruvadi, ECF 148-5 ¶ 4, Plaintiff does not show that she was singled out vis-à-vis the dozens of other professors whose classes were cancelled.

There are no guaranteed summer classes for Morgan State's faculty. Faculty members are offered an opportunity to teach summer classes on a first-come-first-served basis and are paid on a separate contract. ECF 148-5 ¶¶ 2–3. While faculty are compensated for summer classes in part based on their enrollment, Morgan State does not control its students' enrollment choices. Therefore, Plaintiff has offered no evidence that the denial of summer teaching was discriminatory. Nor has she shown evidence that the Office's stated reason for the decision to cancel and later reopen the class was pretext.

### h.  Withholding Financial Compensation for Service to the School

Eighth, Plaintiff states that she was unfairly denied financial compensation for service to the school. This issue involves the Dean's discretionary awards for exceptional service. Because, by definition, the Dean evaluates the employees' performance to decide whether to give a discretionary award, Plaintiff's own belief that her performance was exceptional carries no weight. As the Fourth Circuit has reiterated on many occasions, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 280 (4th Cir. 2000) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996)).

Moreover, Plaintiff has not adduced evidence of any similarly situated employee who received an award. Each of the colleagues she cites performed different amounts of work for different periods of time, and some work might be more valuable than other work in the eyes of the Dean. For example, Dr. Keys served on the school committee for almost ten years and received

a monetary award in 2010 for summarizing data collected over the previous five-year accreditation cycle, ECF 127-8 ¶ 3, whereas Plaintiff only served on the school committee for one semester and failed to summarize that same data, ECF 127-2 at 158:1–22, ECF 127-7 at 116:20–117:7, ECF 127-24 at 5. Similarly, Dr. Tang and Dr. Sun served in various leadership roles that Plaintiff never held. ECF 127-4 ¶¶ 10–11. Not every colleague received an award every year, evidencing a substantial exercise of discretion in evaluating the professors' performance. In light of this evidence, Plaintiff cannot show that she was treated differently than any similarly situated non-Egyptian employee with respect to the Dean's discretionary awards.

### i.   Failing to Provide Annual Evaluations

Ninth, Plaintiff alleges that Dr. Finney failed to provide annual performance evaluations. Morgan State concedes that Dr. Finney did not prepare evaluations for Plaintiff after Plaintiff filed her complaint against Dr. Finney. Dr. Finney also declined to evaluate another professor, Pamela Queen, who is non-Egyptian and had made a similar complaint against her. ECF 127-6 at 131:14–20. Plaintiff proffers no evidence, then, that Morgan State's legitimate non-discriminatory reason for failing to provide an evaluation (the pendency of her complaint against Dr. Finney) was pretextual.

Even had Plaintiff been able to establish pretext, she has not established that the missing performance evaluations had any impact on her work conditions. She did not miss any merit raises or COLA adjustments, ECF 127-3 ¶ 6, and she is currently the highest paid Associate Professor in the Accounting Department, ECF 127-5. While she alleges that the lack of performance evaluations rendered her ineligible to apply for a Regent Professorship, ECF 136-2 ¶ 6, that program has not been adopted and no such professorships have been awarded to anyone, ECF

127-3 ¶ 4. Moreover, Plaintiff's ability to obtain promotion is not contingent on the production of annual performance reviews. ECF 127-3 ¶ 8.

Ultimately, Plaintiff has adduced no evidence sufficient to create a genuine issue of material fact regarding any incidents of national origin discrimination, and summary judgment is warranted as to that claim.

### 2. Retaliation

In addition to national origin discrimination, Plaintiff asserts that adverse actions were taken against her in retaliation for her complaint about Dr. Finney. A prima facie case of retaliation requires proof that (1) the plaintiff engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). The burden then shifts to the employer to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason. *Id.* If the employer makes this showing, the burden shifts back to the plaintiff to show that the employer's purported non-retaliatory reasons were a pretext for discrimination. *Id.*

In terms of the required adverse action, the Fourth Circuit has explained that the retaliatory action must be "materially adverse":

> "[M]aterially adverse" means adverse actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."

> But how harmful is an action that would "dissuade a reasonable worker"? "[P]etty slights, minor annoyances, and simple lack of good manners" won't do it. Instead— according to the Supreme Court—the action must cause objectively "significant" harm. So, whatever you call the "materiality" standard, it requires significant harm.

*Israelitt v. Enterprise Services, LLC*, 78 F.4th 647, 656 (4th Cir. 2023) (internal citations omitted).

In the context of her retaliation claim, Plaintiff alleges a number of actions that fall well on the "petty slights and minor annoyances" side of the line, specifically (1) a referral for a

workability evaluation that was withdrawn when Plaintiff submitted clearer physician documentation in support of her medical leave; (2) a letter of reprimand that called Plaintiff "non-collegial," but did not become part of her employment file; (3) Dr. Finney's emails to Plaintiff (cc'ing other people) making what Plaintiff believed to be disparaging comments; (4) Dr. Finney's announcement at a staff meeting that Plaintiff would not receive a performance evaluation; (5) Dr. Finney's request for Plaintiff to complete assessment work (which she did not complete); (6) Dr. Keys's non-collegial behavior towards Plaintiff; and (7) administrators' overturning the grade that Plaintiff assigned to a particular student. Those incidents, while clearly annoying to Plaintiff, caused her no significant harm to the extent they caused her any harm at all. They therefore cannot support a retaliation claim.

As to three other transgressions Plaintiff cites, she is unable to establish a causal connection between the actions and the complaint she filed. First, on October 1, 2018, Dr. Finney emailed Plaintiff a cease-and-desist letter, stating that all of her future off-campus teaching had to be pre-approved one semester prior. ECF 127-22. Plaintiff offers no evidence that Dr. Finney knew of her discrimination complaint at that point in time, and Dr. Finney testified that she first learned about it afterwards. ECF 148-1 at 195:1–5. Plaintiff therefore cannot causally connect Dr. Finney's letter to her complaint.

Second, Plaintiff cannot establish that the cancellation of her class in summer 2020 was causally related to her discrimination complaint. As discussed above, the Office of Academic Affairs cancelled her course along with dozens of others, and Plaintiff offers no evidence that the Office even knew of the complaint that she had filed.

Third, Plaintiff cannot show that Morgan State's failure to investigate Dr. Alao's sexual harassment conduct was casually connected to her discrimination complaint. Instead, as discussed

above, Morgan State declined to pursue a claim because Plaintiff specifically told the Dean and the EEO that she did not want to pursue a claim.

Moreover, as discussed above, Plaintiff cannot premise her retaliation claim on the Dean's decision to deny her sabbatical request in 2018, because Morgan State has offered a legitimate non-discriminatory reason for the denial (the "No Sabbatical" policy). Plaintiff provides no evidence of pretext.

With those issues resolved, Plaintiff asserts just two additional incidents that she ascribes to retaliatory animus. First, in October 2018, Dr. Finney received an email from Plaintiff asking her to stop all contact. ECF 127-24 at 3 ("I'm requesting that you stop harassing me on a daily basis by any means of communication including phone calls, emails or in person."). Thereafter, Dr. Finney removed Plaintiff from a departmental email chain, causing Plaintiff to miss at least one Department-wide vote before she requested and received reinstatement to the email list. Dr. Finney asserts that the removal was not retaliatory but was attributable to a legitimate non-discriminatory reason: Her compliance with Plaintiff's request to have no contact.

Ultimately, even if Plaintiff could establish that Dr. Finney's proffered reason was pretext, she cannot establish that she suffered substantial harm from the incident. In fact, the content of the communications that she did not receive was apparently of no concern to Plaintiff, who testified that she never bothered to check to see what she may have missed. ECF 148-1 at 251:1–22 ("[I]t's past also for me so who cares.") She therefore cannot establish that the temporary removal from the email list caused her significant harm or otherwise constituted an adverse employment action.

Second, Plaintiff alleges that on February 27, 2019, Dr. Finney removed Plaintiff from teaching a master's level class, ACCT 631, over her protest. Plaintiff contends that Dr. Finney took that step to deprive her of teaching a course at the graduate level. Dr. Finney offered a

legitimate non-discriminatory reason for the decision: She testified that she removed Plaintiff from the course because Plaintiff "was always complaining about the low enrollment, and [Dr. Finney] couldn't cancel the class, but [Dr. Finney] didn't take [Plaintiff] out because of the enrollment, it was only when [Plaintiff] told [Dr. Finney] that the Course depresses her . . . Because [Dr. Finney] felt it would also depress the students if [Plaintiff] was depressed." ECF 148-1 at 190:14–17. Morgan State further notes that Dr. Finney assigned Plaintiff a Ph.D. level graduate course in 2020 and she was still teaching it at the time of her deposition. *Id.* at 193:2–10; ECF 148-2 at 252:19–253:10. Plaintiff, who admits to complaining about the low enrollment in ACCT 631, again offers no evidence of pretext. ECF 127-26 at 3 ("I would like to mention that Sharon Finney told me that she will remove me from teaching the only graduate course I am currently teaching (ACCT 631) in the Masters of Accounting / MBA program when I complained from [sic] the low enrollment."). Plaintiff has therefore not adduced evidence to create a genuine issue of material fact as to any retaliatory act, and summary judgment is appropriate.

## V.     CONCLUSION

For the reasons set forth above, Morgan State's Motion for Summary Judgment, ECF 127, is GRANTED, and Plaintiff's Cross-Motion for Summary Judgment, ECF 136, is DENIED. A separate Order of Judgment follows.


Dated:  September 28, 2023                        _____/s/_____
                                                  Stephanie A. Gallagher
                                                  United States District Judge